(Decided 3rd June, 1875.)

---

## The Knickerbocker Life Insurance Company of New York *vs*. Magdalena Peters.

*Life Insurance—Suicide of the Insured; his Insanity at the time—Proviso in Policy making it Void, if the Insured died by his own act.*

A life insurance policy contained a proviso, that in case the insured should "die by his own hand or act, the policy should be void." The insured committed suicide by hanging. In an action on the policy, it was HELD :

1st. That this proviso would not prevent a recovery if the insured killed himself in a fit of insanity which overpowered his consciousness, reason and will.

2nd. That it was incumbent upon the plaintiff to show that the insured was insane when the act of self-destruction was committed—proof merely that he was insane at times, would not be sufficient.

3rd. That insanity could not be inferred from the fact that the insured destroyed his own life.

APPEAL from the Court of Common Pleas.

This was an action of assumpsit brought by the appellee on a policy of insurance issued to her on the life of her husband, John Peters, by the appellant. The policy contained a proviso that "in case the insured shall die by his own hand or act, then this policy shall be void." The defendant pleaded, 1st. That it never was indebted. 2nd. That the assured did not comply with the conditions of the policy. 3rd. That the assured died by his own hands and act. Issue was joined on the first and second pleas, and the plaintiff replied to the third plea, that the assured, at the time of his death, was laboring under insanity, and was impelled to the taking of his life by a power he could not resist. On this replication issue was joined.

At the trial the plaintiff offered in evidence the policy, and proved the due payment of the premiums thereon. She further proved that the assured died on the 8th of October, 1873, and that she went at once to the office of the defendant in Baltimore and gave notice of his death. It further appeared from the evidence that Peters hanged himself in an out-house on the premises which he occupied. Evidence was also introduced tending to show the insanity of the assured.

The plaintiff offered two prayers which the Court (GAREY, J.,) granted. The defendant offered fourteen prayers, the fourth, twelfth and fourteenth of which the Court granted, as also the eighth with a modification—its other prayers were refused. The defendant excepted; it also specially excepted to the prayers of the plaintiff, upon the ground that there was no sufficient evidence to sustain them. The insertion of the prayers is deemed unnecessary.

The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON and MILLER, J.

*William A. Fisher,* for the appellant.

What is the proper construction to be placed upon the words, that the policy is to be void in case the assured dies by his own hand or act? It must be admitted that there exists an irreconcilable difference of opinion between the various Courts as to the construction to be placed upon such clause. Some of the Courts hold that the policy is avoided, when the assured kills himself, intending to do the act, and having sufficient capacity to understand the physical nature of the act he is about to do, and that it must result in his death, and that it is of no consequence that he may have been under some insane delusion which blinded him to the moral aspect of the case. Other cases hold that if the assured was incapable of understanding the moral character of the act, the policy will not be avoided.

The former is the more just and reasonable rule. If the operation of the clause is to be confined to cases in which the assured was in the full possession of all his faculties at the time of the taking of his own life, then it was wholly unnecessary to insert it, because there could not be a recovery under such circumstances, because of the fraud of the assured. *Hartman vs. Keystone Ins. Co.,* 21 *Penna. State,* 466 ; *Bliss on Life Insurance, secs.* 242 *and* 243.

The former rule is supported by the English cases. *Borradaile vs. Hunter,* 5 *Mann. & Gran.,* 639 ; *Clift vs. Schwabe,* 3 *Mann. Gran. & Scott,* 437. By the Courts of Massachusetts. *Dean vs. American Mutual Life Ins. Co.,* 4 *Allen,* 96 ; *Cooper vs. Mass. Mut. Ins. Co.,* 102 *Mass.,* 227. By several of the Judges in the Circuit Courts of the United States. *Nimick vs. Mut. Ben. Life Ins. Co.,* 3 *Brewster,* 502; *Gay vs. Union Mutual Life Ins. Co.,* 9 *Blatchford,* 142.

The earlier cases in New York seemed to countenance the other construction, but the highest Court of that State has deliberately given its adhesion to the position now

contended for. *Van Zandt vs. Mut. Ben. Life Ins. Co.*, 55 *New York*, 170.

*J. Alexander Preston*, for the appellee.

MILLER, J., delivered the opinion of the Court.

The insurance company defends this action under the clause in the policy which makes it void, if the assured "shall die by his own hand or act." It is now too well settled to admit of question, that this clause is not to be construed as comprehending every possible case in which life is taken by the party's own act. For instance, all the authorities concur in the view that an unintentional or accidental taking of life is not within the meaning and intention of the clause. Thus if by inadvertence or accident a party shoots himself with a gun or pistol, or takes poison by mistake, or in a sudden frenzy or delusion tears a bandage from a wound and bleeds to death, in the literal sense of the terms he dies by his own act, yet all the decisions agree that a reasonable construction of the proviso according to the plain and obvious intention of the parties would exclude such cases from its operation. There is much conflict of judicial opinion as to what in other respects, is its true construction. The English Courts have determined that the clause includes all intentional acts of self-destruction, whether criminal or not, and that insanity, in order to prevent the clause from operating, must have progressed so far or be of such a character, as to render the party unable to appreciate and understand the nature and physical consequences of the act he was committing, and that the question whether he was, at the time, in a state of mind to be morally and legally responsible for his acts is immaterial. *Borradaile vs. Hunter*, 5 *M. & G.*, 639; *Clift vs. Schwabe*, 3 *M. G. & S.*, 437. The rejection of this latter consideration met however with the strong dissent of some of the ablest of the English

Judges. CH. J. TINDAL, C. B. POLLOCK and CRESWELL and WIGHTMAN, J. J., held that looking at the words themselves and the context and position in which they are found, a *felonious killing of himself* and no other was intended to be excepted from the policy. That was the construction placed by C. J. TINDAL, upon the proviso in *Borradaile vs. Hunter,* and the clause before us is equally open to the same application of the maxim *noscitur a sociis,* and to the same answer that was given to it by a majority of the Court in that case.

There is also a diversity of opinion upon the same subject in this country. In *Dean vs. American Mutual Life Ins. Co.,* 4 *Allen,* 96, the Court, in a very elaborate opinion by C. J. BIGELOW, which is generally considered as adopting and following *Borradaile vs. Hunter,* use this language : "If the death was caused by accident, by superior and overwhelming force, in the madness of delirium, or under any circumstances from which it may be fairly inferred, that the act of self-destruction was not the result *of the will or intention* of the party adapting the means to the end, and contemplating the physical nature and effects of the act, then it may be justly held to be a loss not excepted within the meaning of the proviso. A party cannot be said to die by his own hand, in the sense in which those words are used in the policy, whose self-destruction does not proceed from the exercise of *an act of volition, but is the result of a blind impulse* of mistake or accident, or of other circumstances *over which the will can exercise no control.*" And in the more recent case of *Cooper vs. Massachusetts Ins Co.,* 102 *Mass.,* 227, the same Court declares that this limitation is in substance the same as that which the English cases have adopted. In *Eastabrook vs. Union Mutual Life Ins. Co.,* 54 *Maine,* 224, the Judge at the trial instructed the jury, that if the insured was governed by irresistible or blind impulse in committing the act of suicide, the plaintiff could recover, and the jury found

specially that the self-destruction was the result of a blind and irresistible impulse, over which the will had no control, and was not an act of volition. The Court, in a well reasoned opinion by Ch. J. APPLETON, after concurring in the construction of the clause, and the views expressed by C. J. TINDAL in *Borradaile vs. Hunter*, add : "But whether these views are correct or not, the defendants had the benefit of instructions in entire conformity with the law as stated by the Supreme Court of Massachusetts in *Dean vs. American Mutual Ins. Co.*, and the jury have found the facts such as in accordance with the law of that case would justify their verdict" The Court of Appeals of New York in *Van Zandt vs. Mutual Life Ins. Co.*, 55 *N. Y. Rep.*, 169, admit the clause would not apply if the party committed the act under the influence of *some insane impulse which he could not resist*, but insist that no case has gone so far as to *adjudicate*, that the mere want of capacity to appreciate the moral wrong involved in the act, where it was voluntary and intentional, unaccompanied by any want of appreciation of its physical nature and consequences, or by any insane impulse, or want of power, or will, or self-control, is sufficient to take the case out of the proviso ; that the prevailing opinion in *Breasted vs. The Farmers' Loan and Trust Co.*, 4 *Selden*, 299, did not undertake to overrule *Borradaile vs. Hunter* and *Clift vs. Schwabe ;* and that in *Life Insurance Co. vs. Terry*, 15 *Wallace*, 580, the question of the capacity of the deceased to appreciate the moral character of the act was not involved, and all that is said on that subject in the opinion, is *obiter*. Whether this be a just criticism upon the judgment of the Supreme Court, or whether if that high tribunal did definitely adjudicate in the case referred to, that inability to appreciate the moral character of the act, or to distinguish between right and wrong, prevents the operation of the clause, such be its just and true construction, are questions upon which we express no opinion, because,

in our judgment, the case before us falls clearly within the line of adjudications which have adopted and followed the law of the English cases.

The act of self-destruction in this case was by hanging, and in granting the plaintiff's two prayers, the Court instructed the jury that the clause in question would not prevent a recovery, if they found from the evidence, 1st, that the deceased killed himself in a fit of insanity, *which overpowered* his *consciousness, reason and will*, and thus acted from a *mere blind* and *uncontrollable impulse*, or 2nd, that he killed himself in a fit of insanity, *impelled by an insane impulse he could not resist*. They were also further instructed at the instance of the Company, and by the Court in modifying one of the defendant's prayers, 1st, that if they found the deceased destroyed his own life, then they should find for the defendant, unless they believe from the evidence, that he was *at the time* of such self-destruction, *impelled thereto by insane impulse, which the reason left him did not enable him to resist*, and the presumption is, that he was not impelled thereto by any such impulse, in the absence of evidence to the contrary, and such evidence must relate to the precise time of the occurrence if he was only subject to fits of insanity ; 2nd, that after they are satisfied he died by his own hand, it becomes incumbent on the plaintiff, on her part to offer proof sufficient to prevent the operation of the clause, and she does not comply with such exigency by proof merely, that he was insane at times ; she must prove that he was insane when the act was committed, and, in the absence of proof of his condition at the precise time when the act was committed, they must presume he was then sane, as they cannot draw an inference that he was insane from the fact that he destroyed his own life.

These instructions state the law more explicitly and more favorably for the insurer, than is found in any of the American authorities, to which we have referred, or to

which our attention has been called in argument. They exclude altogether the idea of any exercise of *volition* in the commission of the act, and the *power* to refrain from doing it. If a man's consciousness, reason and will are overpowered, and he is impelled to the act by an insane impulse which he cannot, or which the reason he has left does not enable him to resist, how can it be any more justly said that the resulting death was " by *his own* hand or act," than if he had killed himself by accident or mistake? Were it possible for one in that condition, and acting under such an impulse, to possess sufficient power of mind and reason to understand the physical nature and consequences of the act, and to have a purpose to cause his own death, still, as he is deprived of all power of resistance, he does the act *involuntarily*, and it is impossible to call it " his voluntary and wilful act." In our opinion the instructions given cover this part of the case, and state the law most favorably for the defence. There was, consequently, no error in the rejection of the appellant's other prayers on the same subject.

But special exception was taken to the plaintiff's prayers, upon the ground that there was no evidence to sustain them, and substantially the same question is presented in some of the defendant's rejected prayers. We have carefully examined the testimony in the record on this subject, and are unable to say, (as we must to sustain this objection,) there was no evidence legally sufficient to authorize a jury to infer and find that the deceased killed himself in a fit of insanity, as stated in these instructions.

*Judgment affirmed.*

(Decided 3rd June, 1875.)