## HARLEYSVILLE MUTUAL CASUALTY COMPANY v. HARRIS & BROOKS, INC.

[No. 681, September Term, 1966.]

*Decided December 5, 1967.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*William A. Ehrmantraut,* with whom were *Donahue, Ehrmantraut, Mitchell & Gleason,* on the brief, for appellant.

*Barry Zaslav,* with whom were *Leonard S. Blondes* and *Stanley R. Jacobs* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Harris & Brooks, Inc. (Harris), the plaintiff below and appellee here, is a corporation engaged in the business of excavating, clearing and grading land. In September, 1961, Harris entered into a contract to "clear, burn and smooth up" a wooded tract of some 15 acres at Aspen Hill Road and Georgia Avenue in Montgomery County.

Gillis, an employee of Harris, testified that on Saturday, September 2, he operated a caterpillar loader at the site where he "cleared the trees and put them in appropriate piles and burned them." There were somewhere between 3 and 5 piles, 10 to 12 feet in height, located at a distance of between 300 and 400 feet from the nearest buildings. Fuel oil was poured on the piles,

which were set afire between 6:00 and 6:30 A.M. on Saturday, September 2.

There was further testimony that while there was no wind when the fires were set, a breeze came up at about 9:30 A.M. on September 2 and "stayed up a little breezy the rest of the day;" that on Sunday, September 3, a summer storm came up, the wind blew quite hard, and the fires were extinguished on the advice of the fire marshal. Climatological data introduced into evidence by stipulation, showed that light and variable winds had been recorded on the days in question at Washington National Airport, some 15 miles distant from the site.

Owners of houses nearby testified that rubber tires had been added to the piles; that the fires produced a heavy black smoke; and that smoke and soot from the fires damaged their properties and contents of their houses on September 2 and 3. There was evidence that the first damage was sustained during the evening and night of September 2, well in advance of the summer storm of September 3. Eight claims, totalling some $16,000, were asserted by neighboring property owners against Harris for smoke and soot damage. These were ultimately the subject of a suit against Harris in Montgomery County, which resulted in the entry of a judgment in favor of the property owners of $2,595.00 for damages sustained by them.

On October 11, 1960, Harris had entered into a contract of insurance with Harleysville Mutual Casualty Company (Harleysville), the appellant. The policy, which was written for a term of one year and was in effect on September 2 and 3, 1961, provided in "Coverage C" that the insurer would

> "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Harris, which had defended the damage suit, satisfied the judgment and entered suit against Harleysville for the amount paid the property owners together with counsel fees incurred in defending the suit. Harleysville denied liability under the insurance contract, contending that the damage suffered by the neighboring property owners had not been caused by accident. This

appeal was taken from the judgment of the lower court entered against Harleysville and in favor of Harris for $3,100.00 (of which $2,500.00 represented payments made in satisfaction of the judgment and $600.00 counsel fees) plus costs.

The only question raised by this appeal is whether the events which gave rise to the entry of judgment against Harris in the earlier case brought by the property owners amounted to damage "caused by accident." The lower court answered this question in the affirmative. With this conclusion we do not agree.

The *Shorter Oxford English Dictionary* (2d Ed. 1939) defines accident as "Anything that happens. an event; especially an unforeseen contingency * * *." *Webster's Twentieth Century Dictionary* (1950) expands this definition: "a happening; an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected * * *."

We have previously held that in interpreting insurance contracts words are to be given their customary and normal meanings. *Smith v. Maryland Casualty Co.,* 246 Md. 485, 491, 229 A. 2d 120 (1967) ; *Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Travelers Ins. Co.,* 233 Md. 205, 196 A. 2d 76 (1963) ; *U. S. F. & G. v. National Paving Co.,* 228 Md. 40, 178 A. 2d 872 (1962) ; *Haynes v. American Casualty Co.,* 228 Md. 394, 179 A. 2d 900 (1962).

The rationale employed by the court below was essentially this: There was no intent to damage. Harris had conducted similar operations in the past without damage. There were no unusual circumstances present. The damage was unexpected and unforeseeable and therefore accidental.

This court has previously held that an accidental result need not, in every case, be the consequence of the use of accidental means.[1] *Haynes v. American Casualty Co., supra.* In other words, the fact that an injury is caused by an intentional act does not preclude it from being caused by accident if in that act,

---

[1.] The attempted distinction between accidental results and accidental means is the "Serbonian Bog" referred to by Mr. Justice Cardozo in *Landress v. Phoenix Mutual Life Insurance Co.,* 291 U. S. 491, 499 (1934) (dissenting opinion).

something unforeseen, unusual and unexpected occurs which produces the result.

In the *Haynes* case, where the insurance policy provision was substantially similar to that in the instant case, the contractor pointed out a property line to his employees and left the site. When he returned, he found that they had encroached on adjacent property and had cut down 48 trees. The insurer denied liability on the theory that the damage was the result of a voluntary and intentional act and therefore could not have been "caused by accident" which would have brought it within the terms of the policy. The insured, on the other hand, contended that while an intentional or voluntary act caused the damage, the result could not have been foreseen, and was therefore damage "caused by accident" and covered by the policy. This was the view adopted by the court.

It is our opinion that *Haynes* is clearly distinguishable from the case at bar. The contractor who points out a property line and leaves the site cannot be charged with a duty to foresee that his employees will cross the line and trespass on the property of another.

Appellee also relies on the cases of *Cross v. Zurich General Accident & Liability Ins. Co.*, 184 F. 2d 609 (7th Cir. 1950) and *O'Rourke v. New Amsterdam Casualty Co.*, 68 N. M. 409, 362 P. 2d 790 (1961). It is our opinion that these cases, too, may be easily distinguished from the present case. The *Cross* case involved the cleaning of the exterior of a building by the insured. When the normal acid solution would not clean effectively, the insured added hydrofluoric acid to the solution. Although the windows were carefully washed with water before and after the application of the solution, the hydrofluoric acid still caused damage to the glass windows. The court found that there was indeed an "accident" within the meaning of the insurance policy, which was similar to that in the case at bar. The facts of the *Cross* case, however, show that in addition to the obvious lack of intent to cause the damage, there were also definite steps taken by the insured to prevent the damage and there was testimony to the effect that the precautions of washing the windows with water should have been sufficient. In the instant case, there is no evidence of any precautionary measures having

been taken by Harris which should have prevented the clearly foreseeable result from taking place.

The *O'Rourke* case was a suit by a roofing company seeking to recover from its liability insurer for rain damage to the interior of a house. On the morning when the work was started, although the weather was clear and dry, the roofer called the Weather Bureau and was told "there was no rain in sight." At the end of the day, he again called the Weather Bureau, and received "the same forecast, no rain in sight." That night it rained. The court held that the damage caused by the rain was an "accident" within the terms of the policy. The situation is distinguishable from that of the instant case, since by his precautionary actions, the roofer had removed the possible damage from the realm of his foresight or reasonable expectation. In the *O'Rourke* case, the court found it necessary to distinguish a case involving a situation quite similar to that of the case at bar. There the court said, 362 P. 2d at 794,

> "American Cas. Co. of Reading, Pa. v. Minnesota F. B. S. Co., 8 Cir. Minn., 1959, 270 F. 2d 686, was a case where insured's fertilizer plant used explosives to blast its solidified material, thereby resulting in loud noises and vibrations and allowing the release of ammonia fumes, powder and dust, noise and vibrations, resulting from the explosions carried on over a period of more than six years, to the damage of surrounding property and discomfort to persons residing nearby. The court held, under the facts, that the resulting damage was not caused by 'accident' within the terms of the liability policy.
>
> "The reasoning of these cases is that a finding that substantial damage of the type incurred was a normal and probable consequence of such blasting and clearing as the contractor undertook; that under the law it is sufficient to sustain a conclusion that the damage was not caused by accident within the meaning of the policy. Or, put another way, these cases involved conscious acts, as a result of which it could reasonably be foreseen that the damage which actually occurred would result."

154

In the present case, Harris took no precautionary measures. It is our view that a contractor who piles trees and underbrush in 10 to 12 foot piles, adds fuel oil and rubber tires, and permits the fires to burn for 36 hours before they are extinguished should be charged with the responsibility of foreseeing that a pall of smoke and soot will result, which may damage adjacent properties. The resulting damage was not "an event that takes place without one's foresight or expectation" (*Webster, supra*) and was not the "injury to property * * * caused by accident" covered by the policy.

*Judgment reversed, costs to be paid*
*by the appellee.*