## STATE FARM MUTUAL AUTO INSURANCE COMPANY *v.* TREAS, ET AL.

[No. 357, September Term, 1968.]
*Decided July 9, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*William R. Hymes,* with whom were *J. William Schneider, Jr.,* and *Fanseen, Schneider & Hymes* on the brief, for appellant.

*Jack L. Hardwick* for George Martin Treas, Jr., appellee; submitted on brief by *Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* for Unsatisfied Claim and Judgment Fund, appellee and by *Benjamin Swogell* for Harry A. Dawson, other appellee.

MARBURY, J., delivered the opinion of the Court.

On February 16, 1968, the appellant, State Farm Mutual Automobile Insurance Company (State Farm), filed a petition for a declaratory judgment in the Circuit Court for Baltimore County, alleging that an insurance policy issued to appellee, George Martin Treas, Jr., did not provide coverage for claims made against Treas for damages resulting from the death of a Mrs. Irma Dawson, who was struck by an automobile operated by Treas. Under the terms of the policy, State Farm agreed to pay for bodily injury liability incurred by Treas in the operation of an automobile if the injury was "caused by accident." The insurance company urged at trial that the injuries which ultimately resulted in Mrs. Dawson's death were caused by intentional acts of Treas. After hearing testi-

mony, on September 19, 1968, the lower court entered an order finding that Mrs. Dawson's death was "caused by accident" within the meaning of the policy. From that order State Farm has entered this appeal.

On Sunday, May 15, 1966, Mr. Harry A. Dawson, the sales manager of Chaney's Eastpoint Motors, ordered two employees, George Martin Treas, Jr. and Henry LaRoue, to go to his residence at 156 Forge Road, Perry Hall, Baltimore County, and pick up his 1964 Oldsmobile. Dawson testified that on the previous night he had experienced some domestic difficulties with his wife, Mrs. Irma Dawson, and he told the men that if his wife objected to their taking the car they were to return to his place of employment and he would pick it up himself. In accordance with his instructions, LaRoue and Treas proceeded to the Dawson residence in Treas' automobile.

When they arrived, Treas initially remained in his car while LaRoue went in the Dawsons' garage and started the motor of the Oldsmobile. At this point, Mrs. Dawson and her daughter, Mrs. Anita Sheets, came out of the Dawson house and told LaRoue not to take the car until Mrs. Dawson could call her husband. Treas was anxious to finish his assignment since his wife and children were holding dinner for him. After he had waited about fifteen minutes and Mrs. Dawson had failed to reappear, Treas decided that he would retrieve the vehicle in question. He went to the Dawsons' garage, got in the Oldsmobile, started the motor, and began driving the car from the garage down the sixty-six foot driveway toward Forge Road. As he was doing so Mrs. Dawson and Mrs. Sheets came out of the house and attempted to prevent Treas from taking the car. Mrs. Sheets tried to open the right door of the vehicle, but was unable to do so. Mrs. Dawson got in front of the Oldsmobile attempting to prevent Treas from leaving the driveway. After screaming at Treas to stop the car because he was "going to kill my mother", Mrs. Sheets ran into the house to call the police. However, Treas continued to move forward out of

the driveway as witnessed by LaRoue and Mr. Joseph Butt, one of the Dawsons' neighbors.

Mr. LaRoue testified that Mrs. Dawson was standing in front of the car with her hands on it and "backing up" during the entire time Treas drove down the driveway. At this point, LaRoue left the scene and went to a bar on Bel Air Road. Mr. Butt observed the incident from the kitchen of his house two doors west of the Dawson residence. He saw Mrs. Dawson "backpedaling" in front of the car from a point approximately fifteen to twenty feet before the car left the driveway and reached Forge Road. According to Mr. Butt, Treas, while driving the car, alternately accelerated and braked three or four times. Finally, Treas "just pushed the gas pedal down and took right off" with Mrs. Dawson still in front of the Oldsmobile. Mr. Butt stated that Mrs. Dawson was in front of the car for the entire period with her hands on the hood of it. She may have moved a bit from side to side. He saw her in front of the vehicle until she disappeared under it sixty to seventy feet up the road. Approximately 200 feet from the driveway, he observed Mrs. Dawson's body come out from under the car, which did not stop, but left the scene. Treas was later found in the men's room of a gas station near the Dawson residence, at which time he admitted to a police officer that he had run over Mrs. Dawson.

Treas testified that when he started to pull out of the driveway Mrs. Dawson stepped in front of the car, then moved to the side and that when he reached Forge Road from the driveway and started to turn left, he stepped on the gas, looked up, saw her and "it was too late." After the impact, Treas stated that he "blacked out" and "went berserk." He was indicted for murder as a result of the incident and was tried before Judge Raine sitting without a jury. At the close of the State's case, he withdrew his plea of not guilty, and voluntarily entered a plea of guilty to common law manslaughter for which he received a sentence of six years in the Maryland Penitentiary.[1]

---

1. For a discussion of manslaughter by automobile see *State*

The lower court found that the death of Mrs. Dawson was an accidental injury within the coverage of the automobile insurance policy issued to Treas by State Farm. The only issue on appeal is whether that finding was clearly erroneous. After a careful review of the record we are convinced that the lower court erred and we hold that Mrs. Dawson's death was not "caused by accident" within the meaning of the insurance policy.

On numerous occasions this Court has announced that in interpreting insurance contracts words are to be given their customary and normal meaning. *Am. Home Assur. Co. v. Erie Ins.*, 252 Md. 116, 248 A. 2d 887 (1969) ; *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 247 A. 2d 272 (1968) ; *Harleysville v. Harris & Brooks*, 248 Md. 148, 235 A. 2d 556 (1967) ; *Smith v. Maryland Casualty Co.*, 246 Md. 485, 229 A. 2d 120 (1967). The *Shorter Oxford English Dictionary* (2d Ed. 1939) defines accident as "Anything that happens, an event; especially an unforeseen contingency . . . ." and *Webster's Twentieth Century Dictionary* (1950) states: "a happening; an event that take place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected . . . ." Two Maryland cases have dealt with the precise question as to whether an injury was caused by an accident or by an intentional act. *Harleysville v. Harris & Brooks, supra*, and *Haynes v. Am. Cas. Co.*, 228 Md. 394, 179 A. 2d 900 (1962). However, in both of these cases, which involved only property damage, the offending persons admittedly intended to do the act which caused the resulting damage. In the instant case, Treas disclaimed any intention whatsoever to strike Mrs. Dawson. However, examination of the facts reveals that it is impossible to conclude that Treas could have reasonably expected anything other than what he accomplished from the time he started driving toward Mrs. Dawson until she was finally struck by the vehicle. He admitted

*v. Gibson*, 4 Md. App. 236, 242 A. 2d 575 (1968), aff'd, 254 Md. 399, 254 A. 2d 691 (1969).

that he saw Mrs. Dawson in front of the car in the driveway. The testimony of LaRoue and Butt indicated that Mrs. Dawson backpedaled at least fifteen to twenty feet in the driveway. Further, the physical investigation made by the Baltimore County police department disclosed that Mrs. Dawson's body did not strike the ground until ninety-four feet east of the Dawson driveway on Forge Road. Her body finally came to rest some 266 feet from the driveway. Certainly, even if Treas had not seen Mrs. Dawson until just after he turned from the driveway onto Forge Road, it was not too late to desist from forcing her some ninety feet up the street. The question of intention is to be derived from the established facts, *Wilner v. Wilner*, 251 Md. 13, 246 A. 2d 273 (1968), *Blair v. Blair*, 199 Md. 9, 85 A. 2d 442 (1952).

As stated by Judge Singley, speaking for this Court in *Harleysville v. Harris & Brooks, supra*: ". . . the fact that an injury is caused by an intentional act does not preclude it from being caused by accident if in that act, something unforeseen, unusual and unexpected occurs which produces the result." 248 Md. at 151-52, 235 A. 2d 558. In *Harleysville*, a contractor who burned trees, underbrush, oil and old tires, was charged with the responsibility of foreseeing that smoke and soot might damage adjoining properties. Such damage was held not to be "caused by accident." If a failure to take precautions to prevent damage due to smoke could not be considered an accident, this Court cannot say that the continuing actions of Treas in accelerating and braking to induce Mrs. Dawson to move, and finally striking her when she refused to do so, could be denominated an accident. Under the circumstances of this case the possibility of injury to Mrs. Dawson could not be said to be unforeseen, unusual, or unexpected.

> *Order reversed and case remanded for the passage of an order conforming to this opinion. Costs to be paid by appellees.*