679 A.2d 540

**Robert T. SHEETS, Jr. et ux.**

v.

**The BRETHREN MUTUAL INSURANCE COMPANY.**

**No. 47, Sept. Term, 1995.**

Court of Appeals of Maryland.

July 26, 1996.

Clifford R. Bridgford, Frederick, for Appellants.

Dana Moylan (Donald E. Beachley, Miller, Oliver, Beachley & Stone, on brief), Hagerstown, for Appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

We are called upon in the instant case to determine whether the trial court was correct in granting an insurer's motion for summary judgment on the basis that it had no duty to defend or indemnify its insured against a claim of negligent misrepre-

sentation in the sale of property. We hold that because the insurer did owe a duty to defend its insured, the trial court erroneously granted the insurer's motion for summary judgment. We therefore reverse and remand the case to the trial judge to enter summary judgment in favor of the insured.

## I.

We are asked to review a declaratory judgment action to determine whether The Brethren Mutual Insurance Company (Brethren) owed a duty to defend or indemnify its insured in a tort suit brought against the insured. The underlying lawsuit was instituted by Frits M. Christensen and Helene S. Christensen (the Christensens) in the Circuit Court for Frederick County against Appellants, Robert T. Sheets, Jr. and his wife, Joyce A. Sheets (the Sheetses). The suit alleged that the Sheetses both intentionally[1] and negligently misrepresented that the septic system at their farmhouse was in "good working condition" before selling the property to the Christensens. The suit alleged that, as a result of the misrepresentation, the Christensens purchased the farm several weeks later, and moved in with their nine children. Approximately three weeks after the Christensens took possession of the property, the septic system began leaking and effluent flooded the walk area. The Frederick County Health Department condemned the septic system, and therefore, the Christensens had to replace the system at a cost in excess of $12,000.

In essence, the Christensens' complaint alleged that the failure of the septic system was attributed to the Sheetses' misrepresentations that it was in "good working condition" because, had it not been for those misrepresentations, the Christensens, whose family was too large for the system to operate properly, would not have moved into the house. The Sheetses notified Brethren, their insurance carrier, of the

---

1. The Sheetses do not contend that Brethren had a duty to defend them against a claim of intentional misrepresentation, as the terms of the policy clearly indicate that there is no duty to defend or indemnify against intentional torts.

lawsuit and requested that Brethren defend and indemnify them pursuant to the terms of a farm owner's general liability policy that the Sheetses purchased from Brethren. Brethren refused to do so, claiming that the Sheetses' policy did not cover misrepresentation torts.

The Sheetses then sought a declaratory judgment against Brethren in the Circuit Court for Frederick County asking the court to compel Brethren to defend and indemnify them in the lawsuit against the Christensens. Both parties filed cross-motions for summary judgment asserting that no genuine dispute existed as to any material fact. The court granted Brethren's motion for summary judgment and denied the Sheetses' motion. The Sheetses appealed to the Court of Special Appeals. Before our intermediate appellate court considered the case, we issued a writ of certiorari on our own motion. While the appeal was pending, the Christensens' lawsuit against the Sheetses settled.

## II.

Preliminarily, we note that since there is no information in the record concerning the settlement of the Christensens' suit against the Sheetses, we have no indication of how damages were calculated or whether the suit was settled on grounds of intentional or negligent misrepresentation. Hence, we can not determine whether Brethren would have a duty to indemnify the Sheetses. Consequently, we will discuss only Brethren's duty to defend and not its duty to indemnify.

## III.

▮▮▮▮ In granting a motion for summary judgment, the trial court does not resolve factual disputes, but is instead limited to ruling as a matter of law. *Heat & Power v. Air Products,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990). The standard for appellate review of a trial court's grant or denial of a summary judgment motion is whether the trial court was legally correct. *Heat & Power,* 320 Md. at 592, 578 A.2d at 1206. Hence, we must assume that the facts in the Christen-

sens' complaint are true and examine whether the trial court was legally correct in holding that Brethren did not have a duty to defend the Sheetses against the Christensens' claim for negligent misrepresentation.

In *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842, 850 (1975), this Court held that if plaintiffs in a tort suit allege a claim against an insured that is *potentially covered* by the insurance policy, the insurer is obligated to defend the insured. In a recent decision reviewing the scope of a liability insurer's duty to defend an insured, we had occasion to reaffirm this common law rule. *Aetna v. Cochran*, 337 Md. 98, 102, 651 A.2d 859, 861 (1995). We then stated in *Cochran:*

"To ascertain when an insurer is under a duty to defend an insured in accordance with *Brohawn*, this Court, in *St. Paul Fire & Mar. Ins. [ ] v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981), articulated the following two-part inquiry:

'In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.'

292 Md. at 193, 438 A.2d at 285. To answer these two inquiries as they pertain to the facts of the instant case, we must ascertain the scope and limitations of coverage under the . . . insurance policies and then determine whether the allegations in the [underlying tort] action would potentially be covered under those policies."

.337 Md. 103–04, 651 A.2d at 862.[2]

In applying the *Pryseski* two-step analysis to the instant case, we first turn to the language of the Brethren insurance policy to determine the scope and limitations of the coverage. *See Cochran,* 337 Md. at 104, 651 A.2d at 862. In analyzing the policy, we utilize our rules of construction regarding insurance contracts. As we recently stated in *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617 (1995):

> "In Maryland, insurance policies, like other contracts, are construed as a whole to determine the parties'· intentions. Words are given their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense. 'A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term.'" (Citations omitted).

340 Md. at 508, 667 A.2d at 619.

The farm owner's general liability insurance policy (the policy) issued by Brethren provides coverage for bodily injury and property damage liability. Under the policy, Brethren agreed to "pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Brethren also has "the right and duty to defend any 'suit' seeking those damages."

The policy states that "the insurance applies to . . . 'property damage' only if . . . caused by an 'occurrence,' and the . . .

---

**2.** We recently held that if the allegations in the underlying complaint are ambiguous as to whether there exists a potentiality of coverage under an insurance policy, the *insured* may rely on extrinsic evidence. *Aetna v. Cochran,* 337 Md. 98, 107–12, 651 A.2d 859, 863–66 (1995). The *insurer,* however, may not use such evidence to contest coverage if the allegations in the underlying tort suit sufficiently establish a potentiality of coverage. *Cochran,* 337 Md. at 107, 651 A.2d at 863. Since the Christensens' complaint may be somewhat ambiguous, use of extrinsic evidence by the Sheetses to supplement the complaint would be warranted.

'property damage' occurs during the policy period." "Property damage" is defined under the policy as:

> "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but does not define "accident."

In sum, the policy covers property damage caused by an occurrence. Hence, the Sheetses must demonstrate that the Christensens' complaint at least alleged three independent elements in order to compel Brethren to provide a defense in the tort suit: (1) that there was "property damage" as defined in the policy; (2) that the property damage was "caused" by the negligent misrepresentation; and (3) that negligent misrepresentation [3] is an "occurrence" as that term is defined by the policy. If one of these three elements is not alleged in the underlying tort suit, then Brethren would not be obligated to defend the Sheetses.

Pursuant to the second part of the *Pryseski* inquiry, this Court must look to the Christensens' complaint and any extrinsic evidence adduced to determine if the lawsuit alleges action that is *potentially covered* under the Sheetses' insurance policy with Brethren. *See Sullins*, 340 Md. at 509, 667 A.2d at 619–20. The Christensens' complaint alleged in pertinent part that the Sheetses owed them a duty to disclose all defects in the property prior to the sale of the property. The complaint further alleges that the Sheetses negligently misrepresented that the septic system was in "good working

---

**3.** The only "occurrence" that is potentially covered by the Brethren policy is negligent misrepresentation. Any other potential causes of the septic system's failure happened after the transfer of title in the property and are thus not covered by the Brethren policy.

condition when in fact [they] knew or should have known that the septic system had been repaired and that it had not been inspected by nor received the approval of the Frederick County Health Department." The complaint further states that the Christensens "relied on said misrepresentations" and "[t]hat as a result [of] the said reliance, the Plaintiffs have suffered damages."

## IV.

Following the parties' cross-motions for summary judgment in the declaratory action, a hearing was held before the Honorable Mary Ann Stepler. At the hearing, Brethren argued that the claims made against the Sheetses were not covered under the insurance policy because: (1) "there is no causal nexus or direct causation between the misrepresentation and the property damage;" (2) "the claims for misrepresentation in the complaint are claims only for economic losses [—t]hey are not claims for property damage;" and (3) "the Sheetses' misrepresentations to the Christensens are not an occurrence."

In response, the Sheetses argued that the Christensens' complaint sufficiently alleged a direct causal connection because the Christensens' claim was that the negligent misrepresentation caused a family that was too large for the system to move into the house and use the system, in turn causing the system to break down. The Sheetses further asserted that, since the failure of the system constituted a loss of use caused by the misrepresentation, the lawsuit was potentially covered under Brethren's policy, and therefore Brethren was obligated to defend against the Christensens' claim.

The trial judge agreed with Brethren and granted summary judgment in its favor. The parties reasserted their positions both in brief and in oral argument to this Court. We must determine whether Brethren owed the Sheetses a legal duty to defend. To do so, we must discuss seriatim whether the Christensens' complaint alleged that (1) there was property damage (2) caused by (3) an occurrence. For the reasons

explained below, we find for the Sheetses on all three issues and therefore hold that Brethren owed the Sheetses a duty to defend against the Christensens' complaint.

## V.

## (A) CAUSAL NEXUS

█  The trial judge based her ruling primarily on lack of causation, finding "there to be no causal nexus between the negligent misrepresentation and the actual damages incurred by the owners." The Christensens' complaint alleged that the negligent misrepresentation caused a family too large for the septic system to move in to the house and use the system, in turn causing the system to break down. The Sheetses argue that even if the Christensens' claim may have been a frivolous and inadequate basis for proving causation, their complaint alleged a cause of action that was at least *potentially covered* by the policy. Brethren, on the other hand, asserts that the Christensens' claim that they would not have moved in and thus would not have used the system absent the misrepresentation "defies logic" and is simply too attenuated.

█  In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be. *See* 7C JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4686, at 172 (Berdal ed. 1979) ("In general, the insurer is not permitted to contradict the allegations contained in a complaint since that will be a matter of proof to be determined during the trial of the underlying negligence action."). Brethren should have defended the suit filed against its policy holder even if that suit on its face was frivolous in the allegation of a causal connection between the Sheetses' negligence and the Christensens' property damage. Rather than filing a motion for summary judgment against the Sheetses, Brethren should have filed a motion *on behalf of* the Sheetses against the Christensens on the ground of lack of causal nexus.

The insurance policy in the instant case provides that Brethren "will have the ... duty to defend any 'suit' seeking ... [property] damages." The suit filed by the Christensens against the Sheetses alleged "[t]hat as a result of the breach of the duty owed by [the Sheetses] ... the Plaintiffs ... suffered an injury." That express claim of causation in the Christensens' tort claim against the Sheetses was sufficient to require Brethren to defend the lawsuit even if the claim of causation was meritless.

■ There is an important difference between the duty to defend a lawsuit that affirmatively makes a claim that falls outside of the coverage of the policy, and the duty to defend a lawsuit that fails to allege the elements of a cause of action that if properly alleged and proven would be within the coverage of the policy. Any motion for summary judgment on the basis that a tort suit fails to allege an adequate claim of causation should be made by the insurer against the tort claimant, not against the insured. The fact that the allegation of causation is groundless does not relieve the insurance carrier from defending its insured as long as some causal nexus is at least alleged.

In *Brohawn*, we explained:

"The obligation [to defend] is contractual and exists because of the agreement made by Transamerica with Mrs. Brohawn. Transamerica has expressly promised to 'defend any suit against the Insured alleging such bodily injury ... and seeking damages which are payable under the terms of this [policy], even if the allegations of the suit are *groundless, false, or fraudulent.*' (Emphasis supplied.) Interpreting the same provision, Chief Judge Learned Hand said in *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 751–52 (2d Cir.1949):

'This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the

insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered." The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is "groundless." '

The plain meaning of this covenant is that the insurer will defend any suit stating a claim within the policy even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.' " (Citation omitted).

276 Md. at 408–09, 347 A.2d at 850. *See also Sullins,* 340 Md. at 509, 667 A.2d at 620 ("If the plaintiff in the tort suit alleges a claim covered by the policy, the insurer has a duty to defend where the potentiality exists that the claim could be covered by the policy."). Because the Christensens' complaint expressly alleged a causal connection between the misrepresentation and the failure of the septic system, the claim was *potentially covered.* The trial court therefore erred as a matter of law on this issue.

## (B) PROPERTY DAMAGE

Next, we must determine whether the trial judge was legally correct in holding that the damages to the septic system were not covered as "property damage" under the policy. The Sheetses concede that the money spent to fix the system was economic loss and thus not covered under the policy as property damage.

Also included within the policy's definition of property damage, however, is "[l]oss of use of tangible property that is not physically injured." The Sheetses argue that the trial judge failed to look beyond the allegation of economic loss to see that the complaint alleged property damage in terms of a loss of use of the septic system to the Christensen family. We agree. The Christensens claim they were deprived of the *use* of their septic system. This alleged "loss of use" was property damage as defined in and covered by the Brethren policy.

The trial court therefore erred as a matter of law on this issue.

## (C) OCCURRENCE

Lastly, we must determine whether negligent misrepresentation, as alleged in the Christensens' complaint, constitutes an "occurrence" under the policy. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but does not define "accident." The policy also excludes from coverage property damage "expected or intended from the standpoint of the 'insured.'" Consequently, the question before us is whether the Sheetses' alleged negligent misrepresentation concerning the working condition of the septic system was an "accident."

### 1.

Negligent misrepresentation is a form of negligence. Before we discuss whether negligent misrepresentation is an accident, we must discuss whether any form of negligence can be considered an accident under a liability insurance policy. This question is not easily resolved. Courts that have considered the issue have produced several distinct lines of authority:

> "There is a definite split of authority ... as to what acts of negligence result in liability covered by the terms of ... a policy [insuring against liability caused by accident]. Some courts have held that such policies do not cover liability for the natural and probable consequences of the negligence of the insured or his agent.
>
> \*       \*       \*       \*       \*       \*
>
> [O]ther courts have held that such policies include liability for negligence-caused injury or damage, provided that the injury or damage was not in fact intentional." (Footnote omitted).

J.P. Ludington, Annotation, *Liability Insurance: "Accident" or "Accidental" as Including Loss Resulting from Ordinary*

*Negligence of Insured or His Agent,* 7 A.L.R.3d § 2, at 1264–65 (1966).

The leading cases holding that liability insurance policies covering damages caused by "accident" do not cover damages which are the natural and probable consequences of negligent acts were decided by the United States Court of Appeals for the Tenth Circuit. *See, e.g., City of Aurora, Colorado v. Trinity Universal Insurance Co.,* 326 F.2d 905, 906 (10th Cir.1964). The underlying rationale for these cases is that "everyone is constructively held to intend the natural and probable consequences of his acts." *Hutchinson Water Co. v. United States Fidelity & G. Co.,* 250 F.2d 892, 894 (10th Cir.1957). *See also* 7 A.L.R.3d § 2, at 1264. Thus, damage that is the "natural and probable consequence of a negligent act is not 'caused by accident' within the meaning of policies of this kind." *City of Aurora,* 326 F.2d at 906. For example, in *Neale Const. Co. v. United States Fidelity & Guaranty Co.,* 199 F.2d 591 (10th Cir.1952), the court stated:

"The natural and ordinary consequences of a negligent act do not constitute an accident. If one negligently erects a roof by the use of weak or inadequate rafters, the roof is liable to collapse but its fall is not an accident because such is the ordinary result of such construction. * * * When the means used and intended to be used produce results which are their natural and probable consequences, there has been no accident although such results may not have been intended or anticipated."

199 F.2d at 593. *See also Midland Const. Co. v. United States Cas. Co.,* 214 F.2d 665 (10th Cir.1954) (holding that property damage resulting from rain coming through an opening negligently left in a roof was not caused by accident).

The troublesome aspect of these cases is that their interpretation of the term "accident" severely limits the applicability of general liability policies:

"[E]ven … those courts which follow [this interpretation recognize] … that it so greatly restricts the insurer's liability as to render the policy valueless or even meaning-

less, and denies coverage for what is the predicate of any likely liability against the insured. As one court has pointed out, the insured himself is not liable where damage or injury is the unforeseeable result of his negligence; and where the damage or injury is foreseeable, so that the insured is liable, his insurer is not liable...." (Footnotes omitted).

7 A.L.R.3d § 2, at 1264–65. This problem was recognized by the Tenth Circuit in *Hutchinson Water Co.*, where the court acknowledged:

"Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then by the same logic, there would be no liability where the damage was the unexpected, hence unforeseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence [there would be] no liability upon the insured for his negligent acts. In either instance, the insurer would be free of coverage and the policy would be rendered meaningless."

250 F.2d at 894. *See also City of Carter Lake v. Aetna Cas. and Sur.*, 604 F.2d 1052, 1058 (8th Cir.1979). Although the Tenth Circuit in *Hutchinson, supra*, recognized the problem with its view that the normal consequences of negligence are not accidental, the court nonetheless has continued to adhere to its view. *See Albuquerque Gravel Prod. Co. v. American Emp. Ins. Co.*, 282 F.2d 218, 221 (10th Cir.1960). *Cf. Clark v. London & Lancashire Indemnity Co. of Amer.*, 21 Wis.2d 268, 124 N.W.2d 29, 36 (1963) (Noting that the term "caused by accident" should not be so narrowly construed as to render the policy meaningless, but "neither should this phrase be so broadly construed that the policy is held to cover all operations of the insured which cause damage. Such a construction would render the words 'caused by accident' mere surplusage.").

Other courts reject a restrictive interpretation of the term "accident" and hold that liability policies do cover damage caused by the insured's negligence, as long as the damage is not intentional. 7 A.L.R.3d § 3, at 1265. In *Bundy Tubing Company v. Royal Indemnity Company,* 298 F.2d 151 (6th Cir.1962), the Sixth Circuit held that a claim for damage caused by the negligent manufacture of metal tubing was an "accident" within the meaning of a liability insurance policy. 298 F.2d at 153. The court recognized that to exclude claims for negligence from liability policies on the theory that a negligent act is not an accident would render the policy all but useless to the insured:

> "The fact that the claims here involved ... negligence did not remove them from the category of accident. Bundy would not be legally obligated to pay a claim arising out of an accident occurring without its negligence.... If the liability policy were construed so as to cover only accidents not involving.... negligence, then no protection would be given to the insured. The insured would not need liability insurance which did not cover the only claims for which it could be held liable. The word 'accident' is common in most liability policies and should not be construed in this type of case as not including claims involving negligence...."

*Bundy,* 298 F.2d at 153. The court held that the allegedly negligent manufacture of the metal tubing by the insured was an accident because "failure of the tubing ... was *unforeseen, unexpected and unintended." Id.* (emphasis added).

Other courts have also found various acts of negligence to be "accidents" under liability insurance policies. *See Employers Ins. Co. of Ala. v. Alabama Roofing & Sid. Co.,* 271 Ala. 394, 124 So.2d 261, 262 (1960) (subscribing to view that term accident does not "necessarily exclude[ ] human fault called negligence" and therefore negligent installation of roof was an "accident"); *Atkins v. Hartford Accident & Indemnity Company,* 7 Mich.App. 414, 151 N.W.2d 846, 848 (1967) (relying on *Bundy's* rationale to hold that a negligent sale of habit-forming pills by a pharmacist was an "accident" within the meaning of general liability policy); *Rex Roofing Co. v. Lum-*

ber Mut. Cas. Ins. Co., 280 A.D. 665, 116 N.Y.S.2d 876, 878 (N.Y.App.Div.1952) (holding that negligent failure of roofing contractor to prevent leakage was an "accident"), appeal denied, 281 A.D. 744, 118 N.Y.S.2d 732 (1953); Penley v. Gulf Insurance Company, 414 P.2d 305, 309–10 (Okla.1966) (holding that negligent placing of gasoline instead of diesel fuel in grader was "caused by accident"); Boggs v. Aetna Cas. and Sur. Co., 272 S.C. 460, 252 S.E.2d 565, 567 (1979) (holding that builder's negligence in locating house on lot in such a way as to cause drainage problems was an "occurrence" under insurance policy defining occurrence as an "accident").

2.

This Court has been called on in previous cases to consider whether negligent acts by an insured constituted "accidents" under liability insurance policies. See State Farm Mutual v. Treas, 254 Md. 615, 255 A.2d 296 (1969); Harleysville v. Harris & Brooks, 248 Md. 148, 235 A.2d 556 (1967); Haynes v. Am. Cas. Co., 228 Md. 394, 179 A.2d 900 (1962). In Haynes, a contractor was hired to do excavation work on property in Baltimore County. The contractor pointed out the property line to his employees and left the site for several hours. Upon returning, he found that his workers had encroached upon property owned by another party and cut down 48 trees. After the landowners sued, the contractor sought to have his insurance carrier defend him under a liability policy covering property damage "caused by accident." The insurer refused, arguing that the damage was not caused by accident because the cutting of the trees was a voluntary and intentional act and the damage was the natural result of that act. We rejected the insurer's argument, relying on cases holding that damage not intended by the insured was "caused by accident" under liability policies. Haynes, 228 Md. at 398–400, 179 A.2d at 903–04.

In Harleysville, we distinguished Haynes and found no accident in a case involving smoke damage caused by the careless burning of refuse. The insured in Harleysville was a contractor hired to clear trees from a wooded tract of land.

After clearing the trees, the contractor put the trees in large piles together with rubber tires, poured fuel oil on the piles, and allowed the piles to burn unabated for 36 hours. Smoke from the fires caused damage to nearby homes, and the homeowners successfully sued the contractor. Thereafter, the contractor sought to recover the amount of the judgment from his insurer under a policy providing indemnification for property damage "caused by accident." We adopted a dictionary definition of the term accident as, in pertinent part, " 'an event that takes place without one's foresight or expectation. . . . ' " *Harleysville*, 248 Md. at 151, 235 A.2d at 557 (quoting WEBSTER'S TWENTIETH CENTURY DICTIONARY (1950)). Applying this definition to the facts of the case, we then held that the smoke damage was not caused by accident because "[t]he resulting damage was not 'an event that takes place without one's foresight or expectation.' " *Harleysville*, 248 Md. at 154, 235 A.2d at 559 (citation omitted). *See also State Farm*, 254 Md. at 619–20, 255 A.2d at 298–99 (holding that bodily injury inflicted by the insured who drove over a woman standing in front of his car trying to prevent his driving away was not "caused by accident" under an automobile liability policy because the "possibility of injury . . . could not be said to be unforeseen, unusual, or unexpected").

The difficulty in applying these cases is that they are somewhat ambiguous as to the standard used to determine whether the negligent act constituted an "accident." There is some language in the cases suggesting that the Court focused on whether the damage caused by the negligence *should have been* foreseen or expected by the insured, while other portions of the analyses indicate that the dispositive consideration was whether the damage *was actually expected or intended* by the insured. For example, we stated in *Harleysville:*

"It is our view that a contractor who piles trees and underbrush in 10 to 12 foot piles, adds fuel oil and rubber tires, and permits the fires to burn for 36 hours before they are extinguished should be charged with the responsibility of foreseeing that a pall of smoke and soot will result, which may damage adjacent properties. The resulting damage

was not 'an event that takes place without one's foresight or expectation. . . .' " (Citation omitted).

248 Md. at 154, 235 A.2d at 559. This analysis might indicate that the Court considered whether the damage should have been foreseen by the contractor, but ultimately held that the damage was actually expected or foreseen by him and thus not an accident.

Although our prior cases may have been less than clear in explaining the relevant inquiry, we hold today that an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage was " 'an event that takes place without [the insured's] foresight or expectation.' " *Harleysville*, 248 Md. at 154, 235 A.2d at 559 (citation omitted). In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an "accident" under a general liability policy. *Accord Bundy,* 298 F.2d at 153 (holding that negligent manufacture of metal tubing was an accident because resulting damage was "unforeseen, unexpected and unintended"); *First Newton Nat. Bank v. Gen. Cas. Co.,* 426 N.W.2d 618, 625 (Iowa 1988) (holding that there is an accident if the insured "does not expect or intend both it *and* some injury"); *Hauenstein v. Saint Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122, 126 (1954) (holding that an accident is an "unexpected, unforeseen, or undesigned happening or consequence").

We concur with the courts that have held that construing the term "accident" as including negligent acts resulting in unexpected or unforeseen damage conforms to the meaning that a " 'reasonably prudent layperson would attach to the term.' " *Sullins,* 340 A.2d at 508, 667 A.2d at 619 (citation omitted). We agree that this approach is "most in accord with the reasonable expectations of the average purchaser of general liability insurance in the light of the contract language." *Chemtec Midwest Serv., Inc. v. Insurance Co. of N. America,* 288 F.Supp. 763, 768 (D.Wis.1968). *See also Rex Roofing,* 280 A.D. 665, 116 N.Y.S.2d at 878 ("We have no doubt that the average man would consider the occurrence in question as an 'accident' in the common conception of that word."); 1A

INSURANCE LAW AND PRACTICE § 360, at 447 ("An average person buying a personal accident policy assumes that he is covered for any fortuitous and undesigned injury."). *Cf. Haynes*, 228 Md. at 399, 179 A.2d at 903 ("To argue that, because the means employed were not accidental, the resulting damage cannot be construed as being 'caused by accident,' though the damage was in no way reasonably anticipated, is to rely upon a fine distinction which would never occur to, or be understood by, the average policy holder.").

If we were to adopt an objective standard and hold that the term "accident" as used in liability insurance policies excludes coverage for damage that *should have* been foreseen or expected by the insured, such insurance policies would be rendered all but meaningless. Under such an interpretation, the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively *un*foreseeable or *un*expectable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to be held liable for unforeseeable or unexpectable damages resulting from his negligence. Thus, interpreting "accident" as encompassing only negligent acts resulting in unforeseeable and unexpectable damages would leave the insured covered against only those damages for which he or she is not likely to be held liable. We decline to adopt such a restrictive construction of the term accident. We agree with the reasoning of the Eighth Circuit in *City of Carter Lake*:

"To adopt Aetna's interpretation that an injury is not caused by accident because the injury is reasonably foreseeable would mean that only in a rare instance would the comprehensive general liability policy be of any benefit to Carter Lake. Enforcement of this policy in the manner would afford such minimal coverage as to be patently disproportionate to the premiums paid and would be inconsistent with the reasonable expectations of an insured purchasing the policy. Under Aetna's construction of the policy language if the damage was foreseeable then the insured is liable, but there is no coverage, and if the damage is not

foreseeable, there is coverage, but the insured is not liable. This is not the law. The function of an insurance company is more than that of a premium receiver." (Citation omitted).

604 F.2d at 1058.

We recognize that our holding today may be inconsistent with language in at least one Court of Special Appeals opinion that focused on the *foreseeability* of damage to determine whether negligence constituted an accident. In *Ed. Winkler & Son v. Ohio Cas. Ins.*, 51 Md.App. 190, 441 A.2d 1129 (1982), the Court of Special Appeals held that a wrongful accusation of theft by an insured was not an "accident." 51 Md.App. at 195–96, 441 A.2d at 1132–33. Stating that an "accident" is not " 'the natural and ordinary consequences of a negligent act,' " *Ed. Winkler*, 51 Md.App. at 195, 441 A.2d at 1132, the intermediate appellate court relied on Appleman's INSURANCE LAW AND PRACTICE, which in turn relied on the Tenth Circuit. *See* 7A INSURANCE LAW AND PRACTICE § 4492, at 17 (citing *Neale, supra* ). For the reasons we have explained, *supra,* we decline to adopt this restrictive interpretation of the term accident. Accordingly, to the extent *Ed. Winkler* is inconsistent with our holding today, it is disapproved.[4]

### 3.

Turning to the more specific issue before us, we must determine whether the Christensens' allegations of negligent misrepresentation constitute an accident under the Brethren insurance policy. Whether negligent misrepresentation can constitute an accident is a question that has not yet been decided in Maryland, but has been examined by other jurisdictions. Just as courts are divided on the issue of whether

---

**4.** At least one other case applying Maryland law has also relied on *Ed. Winkler & Son v. Ohio Cas. Ins.*, 51 Md.App. 190, 441 A.2d 1129 (1982), for the proposition that an "accident" is not " 'the natural and ordinary consequences of a negligent act.' " *Ed. Winkler,* 51 Md.App. at 195, 441 A.2d at 1132. *See IA Constr. Corp. v. T & T Surveying, Inc.,* 822 F.Supp. 1213, 1215 (D.Md.1993) (holding that a surveying error is not an "occurrence" under Maryland law).

negligence in general is an accident, courts are similarly split on the question of whether negligent misrepresentation constitutes an accident.

On one hand, some courts have stated that negligent misrepresentation is an accident under liability insurance policies. For example, the Supreme Court of New Jersey differentiated between negligent and intentional misrepresentation stating: "Courts generally have held that although the insurer must defend an insured who is accused of reckless, negligent, or innocent misrepresentations, no defense is required when the insured is accused of intentional misrepresentations." *SL Industries v. American Motorists*, 128 N.J. 188, 607 A.2d 1266, 1276–77 (1992). The Supreme Court of Alabama, in *Universal Underwriters v. Youngblood*, 549 So.2d 76 (Ala. 1989), upheld an insurer's duty to defend its insured against a claim for negligent misrepresentation. The court in *Youngblood* stated that "[t]he term 'accident' does not exclude events that occur through negligence," 549 So.2d at 78, and that "[a]ctions for innocent or reckless misrepresentation have been held to be covered" as an occurrence under similar insurance policies. 549 So.2d at 79. Additionally, the Supreme Court of Iowa, in *First Newton Nat. Bank, supra*, held that an insurer had a duty to defend its insured who was sued for, *inter alia*, negligent misrepresentation in the financing of real estate. The Iowa high court stated "[t]he very definition of 'negligent misrepresentation' connotes negligent rather than intentional conduct. * * * '[W]here a complaint is framed in terms of an insured's negligence ... there is a duty to defend.' " *First Newton*, 426 N.W.2d at 625–26 (quoting 7C INSURANCE LAW AND PRACTICE § 4683.01, at 65).

On the other hand, some jurisdictions hold that negligent misrepresentation is not an accident or occurrence. The leading case on this side of the issue is *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500, 502 (9th Cir.1990). There, an insured was sued for negligent failure to inspect property, negligent failure to inform purchaser of alleged defects, and misrepresentation in the sale of property. The Ninth Circuit found that the insured's allegations did not amount to an

" 'occurrence' or a 'peril insured against' under the terms of the policy." *Safeco,* 915 F.2d at 502. The court, however, did not explain its reasoning or cite any authority for this proposition.

California cases that subsequently rely on *Safeco* hold that, under California law, negligent misrepresentation is associated more with fraud than with ordinary negligence and hence cannot be considered an accidental, unintended occurrence. *See, e.g., American States Ins. Co. v. Canyon Creek,* 786 F.Supp. 821, 825 (N.D.Cal.1991) (holding that negligent misrepresentations made in the sale of property, although "framed as a negligence action, ... fall[ ] within the rubric of fraud and not ordinary negligence" under California law and cannot be an occurrence under an insurance policy); *Chatton v. National Union Fire Ins. Co.,* 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, 328 (1992) (holding that negligent misrepresentation under California law "requires intent to induce reliance" and thus is a "subspecies or variety of fraud which is excluded from policy coverage"). This rationale may not apply in Maryland, however, because we have "repeatedly refused to expand the tort [of fraud] to encompass liability for negligent or grossly negligent representations." *Ellerin v. Fairfax Savings,* 337 Md. 216, 238–39, 652 A.2d 1117, 1128 (1995).

Other jurisdictions that have held that negligent misrepresentation is not an accident have focused on the insured's intent to induce reliance on the false statement. *See, e.g., Tschimperle v. Aetna Cas. & Sur. Co.,* 529 N.W.2d 421, 424 (Minn.Ct.App.1995) (holding that an insured's negligent misrepresentations in the sale of farm equipment "cannot be 'accidents' because the insured intends to induce reliance on the statement"); *First Wyoming Bank v. Continental Ins.,* 860 P.2d 1094, 1100 (Wyo.1993) (relying on California law to hold that "[t]he intent to induce reliance ... make[s] the misrepresentations and conduct nonaccidental").

In Maryland, the prima facie elements of the tort of negligent misrepresentation are:

"(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence."

*Gross v. Sussex*, 332 Md. 247, 259, 630 A.2d 1156, 1162 (1993). Although under our definition of negligent misrepresentation the defendant intends that the statement be relied upon, the falsity in the statement and the resulting injury or damage may be accidental. We prefer to follow those cases that treat negligent misrepresentation like other forms of negligence, which are covered as accidents if the insured did not expect or foresee the resulting damage. In accordance with our own precedent outlined above, the ultimate inquiry is whether the resulting damage is " 'an event that takes place without one's foresight or expectation.' " *Harleysville*, 248 Md. at 154, 235 A.2d at 559 (citation omitted).

■ The Christensens' complaint asserts that the failure of the septic system due to use by their eleven member family was a result of statements made by the Sheetses that they "had no problems with the septic system" and that it was in "good working condition." Additionally, the pleadings in the declaratory judgment action state that, according to Mr. Christensen's testimony taken at a deposition, his claim was based on the Sheetses' "negligence and carelessness in failing to reveal certain necessary information about the subject property and in making those misrepresentations" set out in the complaint. According to these allegations, it is possible that the Sheetses did not foresee or expect the damage resulting from their alleged negligent or careless assertion that the septic system worked properly. It is conceivable that

the Sheetses never experienced a problem with the system while they were living on the farm with their two children and therefore, at the time they represented that the system was in good working order, did not anticipate that the Christensens would encounter any difficulties. We therefore hold that the resulting damage fits within our definition of accident because it was an event that may have taken place without the Sheetses' foresight or expectation. Thus, the claim for negligent misrepresentation is at least potentially covered under the insurance policy as an "occurrence." The third prong of the policy triggering Brethren's duty to defend was satisfied by the Christensens' allegations.

We hold that Brethren owed the Sheetses a duty to defend against the underlying tort suit because the Christensens' lawsuit was potentially covered by the insurance policy. For purposes of the duty to defend, the underlying complaint sufficiently alleged: (1) property damage, in the form of a loss of use of the septic system; (2) caused by; (3) an occurrence, in the form of negligent misrepresentation. Moreover, any doubt as to whether the allegations in the complaint state a potentially covered cause of action is ordinarily resolved in favor of the insured. *See, e.g., Cochran,* 337 Md. at 107, 651 A.2d at 863–64. The trial judge therefore erred in granting summary judgment to Brethren and instead should have granted the Sheetses' cross-motion for summary judgment with respect to the duty to defend.

*JUDGMENT OF THE CIRCUIT COURT FOR FREDER-ICK COUNTY REVERSED AND REMANDED FOR FUR-THER PROCEEDINGS CONSISTENT WITH THIS OPIN-ION. COSTS TO BE PAID BY APPELLEE.*

Dissenting Opinion by KARWACKI, J., in which MURPHY, C.J., joins.

KARWACKI, Judge, dissenting.

The majority of this Court has determined that this case should be reversed and remanded to the trial judge to enter summary judgment on behalf of the insureds. Because I

would hold that a negligent misrepresentation cannot, by definition constitute an "occurrence" as defined in the liability policy in question, I would affirm the trial court. Therefore, I respectfully dissent.

I.

The majority opinion has done an admirable job of surveying the decisions of our sister jurisdictions, and categorizing them. Majority opinion at 654–657. As I interpret it, much of this disagreement around the country about whether negligent misrepresentation constitutes an "accident" within the meaning of a liability insurance policy may be attributed to a more fundamental dispute about the nature of the tort of negligent misrepresentation. Clearly, negligent misrepresentation is a difficult concept, whose very name breeds confusion. The name "negligent misrepresentation" is, in itself, an oxymoron because to "misrepresent" requires some measure of intentionality, while the word "negligent" seemingly contradicts the necessity of intent. The prima facie elements of the tort of negligent misrepresentation in Maryland were recently repeated in *Gross v. Sussex*, 332 Md. 247, 630 A.2d 1156 (1993):

"(1) the defendant, owing a duty of care to the plaintiff, *negligently asserts* a false statement;

(2) the defendant *intends* that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's *negligence*."

*Id.* at 259, 630 A.2d at 1162 (emphasis added). The identical formulation may be found in *Village of Cross Keys v. United States Gypsum Co.*, 315 Md. 741, 755–56, 556 A.2d 1126, 1133 (1989); *Weisman v. Connors*, 312 Md. 428, 444, 540 A.2d 783,

783 (1988); *Martens Chevrolet v. Seney,* 292 Md. 328, 337, 439 A.2d 534, 539 (1982). Negligent misrepresentation clearly has elements sounding both in intentional tort and in negligence.

In *Ellerin v. Fairfax Savings,* 337 Md. 216, 652 A.2d 1117 (1995), we had occasion to review the law of negligent misrepresentation. In that case we held that although punitive damages may be recovered for fraud, punitive damages were not available in suits based on negligent misrepresentation. *Id.* at 235, 652 A.2d at 1126. The reason for the distinction is plain: liability for negligent misrepresentation is inconsistent with the punitive damage standard of actual malice. *Id.* Stated otherwise, actual malice requires a degree of intentionality not found in negligent misrepresentation.

It is an insufficient analysis, however, merely to note that this Court adheres to our traditional distinction between fraud and negligent misrepresentation, or that negligent misrepresentation is insufficiently intentional to support punitive damages. The question here is whether negligent misrepresentation has a sufficiently intentional quality to distinguish it from an accident. To make that determination, a closer look at negligent misrepresentation is necessary.

I observe that the first prima facie element of the tort of negligent misrepresentation requires that the defendant "assert" the false statement. *Black's Law Dictionary* (6th ed. 1990) defines the term "assert" as "[t]o state as true; declare; maintain." None of these definitions is consistent with an accidental "blurt." Instead, an assertion requires a degree of intentionality inconsistent with the term accident. This result is consistent with a common sense understanding that a voluntary verbal statement cannot, by definition, constitute an accident, as that term is intended by the policy.

The second element of the tort of negligent misrepresentation requires that the defendant "intends" that the plaintiff will act in reliance upon this statement. This intention, although quite distinct from the intent to deceive necessary to establish fraud, *see Ellerin v. Fairfax Savings, supra,* is also inconsistent with conceptions of ordinary negligence. Al-

though acts that are ordinarily negligent may contain some volitional elements,[1] they are distinct from the intent necessary to prove negligent misrepresentation. The "inten[t] that his statement will be acted upon," *Gross* at 259, 630 A.2d at 1162, is therefore inconsistent with the insurance contract and judicial definitions of "occurrence" as accidental, undesigned or unintended. *Ed. Winkler & Son v. Ohio Cas. Ins. Co.*, 51 Md.App. 190, 195, 441 A.2d 1129, 1132 (1982).[2]

I would therefore choose to have Maryland pick our own path between those of our sister states. Although I would adhere to our traditional distinction between fraud and negligent misrepresentation, I would nonetheless hold that the limited intentionality necessary for negligent misrepresentation is of a sufficient quality to not qualify as an accident, and thus, not an "occurrence." Because I would hold that negligent misrepresentation cannot be an occurrence, it would follow that Brethren has no duty to defend the Sheets against the Christensens' suit, and that the trial court was entirely correct in granting summary judgment.

## II.

I also wish to note my dissent from those portions of the majority opinion labelled as sections V(C) 1 and 2, where the relationship between the policy definition of an "accident" and the negligence standard in tort law is explored. This relationship was not briefed or addressed by either party, is beyond the scope of this appeal, and is superfluous to the decision. I also fear that the majority's new definition of an "accident" may have the unintended effect of resurrecting the antiquated and artificial distinction between accidental *means* and accidental *results*, which Justice Benjamin Cardozo termed a

---

1. One example of the volitional aspect of ordinary negligence would be found if A threw a rock that accidentally hit B. A intended to throw the rock; he did not intend for the rock to hit B. While A's act would be considered negligent, it did have a volitional component.

2. For the reasons stated in part II of this dissenting opinion, I disagree that there was a need to overrule the decision in *Ed. Winkler, supra.*

"Serbonian Bog." *Landress v. Phoenix Mut. Life Ins.*, 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934, 938 (1934) (Cardozo, J. dissenting) (*quoting* John Milton, *Paradise Lost* bk. 2, 1. 592 (1667)) ("A gulf profound as that Serbonian Bog [Lake Serbonis, in lower Egypt] Betwixt Damiata and mount Casius old, Where Armies whole have sunk . . . .").

I consider the question foreclosed as a matter of Maryland law by virtue of our oft-repeated pronouncement that in construing insurance contracts,

> "[w]ords are given their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intend to use the words in a technical sense. 'A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term.' "

*Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617, 619 (1995) (citations omitted). Under that rule of construction, we may not engage in the "tortuous and tortured legal jiu-jitsu," O.C. Sattinger, Annotation, *Insurance: "Accidental Means" as Distinguishable from "Accident," "Accidental Result," "Accidental Death," "Accidental Injury," etc.*, 166 A.L.R. 469, 477 (1947), involved in attempting to separate an accidental result from the accidental *means* of obtaining that result. Instead we must consider if an ordinary layperson would consider a negligent misrepresentation to be an accident. For me, that answer is clearly no.

## III.

For the reasons discussed, I would affirm the trial judge's entry of summary judgment for Brethren.

Chief Judge MURPHY has authorized me to state that he concurs with the views expressed herein.