**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARBOR EAST-OFFICE, LLC,
Plaintiff-Appellant,

v.

TRAVELERS CASUALTY AND SURETY

COMPANY, formerly known as Aetna
Casualty & Surety Company;
FARMINGTON CASUALTY COMPANY,
Defendants-Appellees.

No. 98-2329

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-98-358-S)

Argued: April 7, 1999

Decided: August 30, 1999

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David William Kinkopf, GALLAGHER, EVELIUS &
JONES, L.L.P., Baltimore, Maryland, for Appellant. Lee Hedgecock
Ogburn, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for
Appellees. **ON BRIEF:** Thomas N. Biddison, Jr., Michael W. Skojec,
GALLAGHER, EVELIUS & JONES, L.L.P., Baltimore, Maryland,

for Appellant. Kevin F. Arthur, KRAMON & GRAHAM, P.A., Balti-
more, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In a dispute arising from the improper selection of piles for a con-
struction project in the Inner Harbor area of Baltimore, the contractor
on the project was required to install additional piles. To recover the
costs of repair, the contractor sued the foundation subcontractor, and
the subcontractor impleaded Harbor East-Office, LLC, the owner of
the project. Harbor East filed this action against its insurer, Travelers
Casualty and Surety Company, seeking a declaratory judgment that
Travelers is required to provide Harbor East with a defense and with
coverage for the claims alleged in the underlying suit.

The district court granted summary judgment to Travelers. Because
we find that the conduct imputed to Harbor East did not result in
"property damage" as covered by the relevant insurance policies, we
affirm.

I

Harbor East, the owner of a newly developed office-building proj-
ect on the waterfront in Baltimore, engaged a general contractor to
construct the project, and the contractor in turn hired subcontractors.
Two of the subcontractors, Hardin-Huber, Inc. and Underpinning &
Foundation Constructors, Inc., who had formed a joint venture for the
purpose of constructing the foundation of the office building, installed
proprietary "TPT pre-cast" piles that were specified to have a mini-
mum load-bearing capacity of 175 tons. However, because of the
peculiar soil conditions at the site, the piles were rendered unable to

2

bear this weight. To remedy the problem, the general contractor spent approximately $3 million to design and install over 200 "helper" H-piles.

The general contractor then brought suit against the two subcontractors to recover the costs of this remedial work, and one of the subcontractors, Underpinning, filed a third-party complaint against Harbor East. Underpinning alleged that Harbor East's initial engineering report, prepared by an independent engineering firm, Geo-Technology Associates, Inc., warned against the use of pre-cast piles, noting that on two nearby sites, pre-cast piles had been used and had failed, necessitating replacement by H-piles at great expense. Geo-Technology recommended the initial use of H-piles rather than the less expensive pre-cast piles. Underpinning alleged that Harbor East, in an attempt to reduce costs, disregarded Geo-Technology's report and sought a second opinion from Engineering Consulting Services, Ltd. ("ECS"). While ECS was given Geo-Technology's report, it filed its own report which did not mention Geo-Technology's recommendation but rather recommended the use of the lower cost pre-cast piles. Underpinning alleged that it had no knowledge of the Geo-Technology report as it was given only the ECS report. Underpinning's complaint charged Harbor East with, inter alia, fraud, negligent misrepresentation, fraudulent conspiracy, and respondeat superior liability for the alleged torts committed by ECS.

In this declaratory judgment action, Harbor East contends that Underpinning's claims against it are covered by two comprehensive general liability insurance policies written by Travelers and that, under these policies, Travelers had a duty to defend Harbor East. Travelers issued one policy to Harbor East's construction manager and the other to its general contractor, and it named Harbor East as an additional insured on each policy.

Each policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages." Each policy defines "property damage" as including both "[p]hysical injury to tangible property, including all resulting loss of use of that

3

property," and "[l]oss of use of tangible property that is not physically injured."

The policies also contain the following exclusions: The owned property exclusion excludes coverage for property damage to "[p]roperty you own, rent, or occupy," as well as to "[t]hat particular part of [real] property[,] on which you or any contractor[s] or subcontractor[s] working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations." The work exclusion excludes coverage for property damage to "property that has not been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in`your product' or `your work.'" The term "your work" means"[w]ork or operations performed by you or on your behalf [and] [m]aterials, parts or equipment furnished in connection with such work or operations." The policy also states that "[t]hroughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."

On cross motions for summary judgment, the district court entered judgment in favor of Travelers, concluding that its policies did not provide coverage for or a duty to defend the claims made in the underlying litigation. The court held that the underlying complaint alleged no property damage, as required for coverage, noting that "not one iota of [the piles'] inherent physical capabilities has been diminished since the date of their creation by anything Harbor East is alleged to have done, nor have they been out of use for one day since their installation."

From the district court's judgment, Harbor East filed this appeal.

II

In this diversity suit, we apply Maryland law. "In Maryland, insurance contracts are interpreted as are other contracts." North River Ins. Co. v. Mayor and City Council of Baltimore, 680 A.2d 480, 483 (Md. 1996) (citations omitted). The rule for construing policies is that "the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." Id. (internal quotation marks and citation omit-

4

ted). The duty of an insurance carrier to defend its insured is broader than the duty to pay a claim. Aetna Ins. Co. v. Aaron, 685 A.2d 858, 862 (Md. App. 1996). The duty to defend arises whenever the complaint against the insured alleges "action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 544 (Md. 1996) (citation omitted).

Turning to the language of the policies in question for there to be coverage, there must have been either "physical injury" to tangible property or the "loss of use" of tangible property. Harbor East claims that the TPT piles were physically injured "when they became physically impeded from functioning properly as a result of being improperly placed in clayey soil." As a result of being placed in soil for which they were not suited, the piles are no longer capable of bearing 175 tons as they would be if placed in more appropriate soil.

This contention is meritless. The piles were not physically injured. Indeed, they still stand underneath the building with all of the same physical capabilities that they had before they were placed in the soil. They cannot support as much weight as they would be able to if placed in more favorable soil, but this is not the result of any physical injury. It is, rather, the result of the piles' preexisting capabilities and limitations. The piles have not been physically damaged; they have simply been misused.

Harbor East argues additionally that there has been a "loss of use" of the piles under two theories. First, it argues, the piles can now support less than half as much weight as they would be able to support were they in more suitable soil. Therefore, it concludes, over one-half of the use of the piles has been lost. Second, it contends that the failure of the piles caused an 81-day delay to the project and that this 81-day delay constituted a temporary "loss of use" sufficient to invoke at least the duty to defend under the policies.

While a loss of use does not have to be permanent to constitute "property damage," see id. at 545, in this case, there was no loss of use, temporary or permanent. The piles continued to be used to support the building. While they were not capable of supporting as much weight as expected, this is not because of any loss of use; it was

5

because they were never capable of meeting expectations given their inherent capabilities and the condition of the soil at the site. Additionally, there was no "loss of use" of the piles during the 81-day period because the piles were being used during the entire period to support the partially constructed building. It is true that the building could not be used, during the delay period, but it never had been in use prior to that time.

Because there was neither physical injury to the piles nor loss of use of the piles, the policies' requirement for"property damage" were not alleged in the underlying case, and Travelers therefore had no duty to indemnify or to defend Harbor East.

III

Even if we were to assume that "property damage" occurred, policy exclusions would apply in this case. Both policies exclude coverage for (1) property damage to "[p]roperty you own, rent, or occupy," (2) property damage to "[t]hat particular part of[real] property[,] on which you or any contractor[s] or subcontractor[s] working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations," and (3) property damage to "property that has not been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in `your product' or `your work' [which includes w]ork or operations performed by you or on your behalf [and] [m]aterials, parts or equipment furnished in connection with such work or operations."

Harbor East owns the piles, which became its property when the piles were affixed to Harbor East's real estate. See Schofer v. Hoffman, 34 A.2d 350, 351 (1943); State Dep't of Assessments & Taxation v. Metrovision of Prince George's County, Inc., 607 A.2d 110, 114 (Md. App. 1992) (Motz, J.). This ownership by the insured implicates the first exclusion. Also the assumed property damage would have occurred to the real property (i.e. the lot containing the office building, a part of which was the affixed piles) on which Harbor East's contractors and subcontractors were working and the damage would have arisen out of those operations, implicating the second exclusion. And, finally the assumed property damage would have occurred to piles that had not been physically injured, as a result of

6

the work of Harbor East and/or entities working on its behalf, thus implicating the third exclusion.

Harbor East claims that the exclusions do not bar coverage here because they all refer to "you," and under the policy, "you" refers to the named insured and not to additional insureds such as Harbor East. Although this contention might be questionable under the Maryland rule that additional insureds generally have no greater rights than the named insured, see DeJarnette v. Federal Kemper Ins. Co., 475 A.2d 454, 462 (Md. 1984), we need not decide that issue because, even if we assume that "you" refers only to the named insured, at least two exclusions would still bar coverage.

The named insureds on the two policies are Harbor East's construction manager and general contractor, respectively. The policies exclude property damage to any real property "on which you or any contractor[s] or subcontractor[s] working . . . on your behalf are performing operations, if the `property damage' arises out of those operations." Even if the word "you" applies only to the construction manager and the general contractor, the exclusion applies here because the assumed "damage" would have occurred to real property on which the named insureds or their agents were performing operations, and the damage was caused by those operations.

The policy also excludes property damage to "property that has not been physically injured, arising out of [an] inadequacy in . . . `your work.'" "Your work" includes "[w]ork or operations performed by you or on your behalf [and m]aterials, parts or equipment furnished in connection with such work or operations." Again, even if the "you" refers only to the construction manager and the general contractor, the exclusion would apply because the assumed "damage" would have occurred because of an inadequacy in the materials furnished in connection with the work of the named insureds or their agents.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

7