PER CURIAM:
Appellants, mobile home park owners, argue that appellees, their liability insurers, must defend a class action suit brought by park residents seeking damages stemming from improperly installed foundations. For the reasons stated below, we hold that the insurers were under no obligation to defend the class action but that the insurers have no right to reimbursement for their contribution to a fund to settle the claims against the parks.
I.
In August of 2002, residents of mobile home parks owned by appellants filed a class action suit in a Maryland state court, complaining about the parks’ alleged complicity in the faulty installation of the foundations for their mobile homes. J.A. 271-304. The residents claimed that the parks employed a company that defectively installed mobile home foundations, that the parks knew of the installer’s defective workmanship, and that the parks required residents to use this installer. Id. The complaint alleged violations of Maryland consumer protection and real property laws, breach of contract, fraud, negligent misrepresentation, conspiracy, unjust enrichment, fraud in the inducement, negligence, and breach of warranty. Id. at 293-303.
The parks tendered the residents’ complaint to their liability insurers, American *365 Modern Home Insurance Company (American Modern), Continental Insurance Company, and Niagra Insurance Company, for defense, see id. at 259-60, but the insurers denied coverage because “the Complaint does not seek damages for liability covered under the terms of the policies for ‘property damage’ caused by an ‘occurrence,’ ” id. at 391-409.* The residents’ third amended complaint, however, included allegations that their homes were damaged as a result of the parks’ alleged conduct. See, e.g., id. at 529 (“The home ... is un-level with doors and windows out of square.”). Because American Modern concluded that the third amended complaint might allege property damage covered by its policies, it agreed to defend the parks against it subject to a reservation of its rights to dispute whether the residents’ claimed losses were, in fact, covered under the policies. Id. at 582-600.
Prior to trial, the residents’ class action settled. See id. at 601. In order to facilitate the settlement, which capped its potential liability, see id. at 630, American Modern agreed to pay $240,000 into the settlement fund, id. at 837. In letters sent to the parks before the insurers’ payment, American Modern made clear that it was paying into the settlement fund “under a complete reservation of rights to recover back its contribution for damages that are not covered by its insurance policies with the various insureds.” Id. at 655.
American Modern filed this action in the district court after the residents filed their first amended complaint. It sought a declaration that the policy did not obligate the insurers to defend the residents’ suit against the parks. Id. at 24-39. The district court, deciding the case after the residents’ suit settled, held that the insurers were under no obligation to defend the parks because there was “no potentiality that the [residents’] tort claims could be brought within the coverage of the policy.” Id. at 58. Without analysis, it also ordered the parks to “refund to American Modern Home Insurance Group the funds that American Modem paid to satisfy the terms of the class action settlement agreement.” Id. at 60. We affirm the district court’s holding on coverage but reverse its order requiring the parks to reimburse American Modern for their contribution to the settlement fund.
II.
A.
The district court characterized the residents’ allegations as claims for “breach[es] of their [the parks’] contractual duties to the mobile homeowners by failing to properly install their mobile homes.” J.A. 57. The district court then concluded that because the definition of “property damage” under Maryland law “does not include the normal, expected consequences of poor workmanship,” there was no potential that the residents’ claims could be considered claims for property damage covered by the policy. Id. It therefore held that the insurers were not required to defend the suit. Id. at 58.
The Maryland Court of Appeals has stated the test for deciding whether an insurer has a duty under Maryland law to defend a tort suit against its insured:
[T]wo types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort *366 action potentially bring the tort claim within the policy’s coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.
St. Paul Fire & Marine Ins. Co. v. Pryseski 292 Md. 187, 438 A.2d 282, 285 (1981). In this case, the policies provide that the insurers have “the right and duty to defend any ‘suit’ seeking” damages from the insured due to “property damage” that is caused by an “occurrence.” J.A. 109. The policy defines “property damage” as “physical injury to tangible property” and defines “occurrence” as “an accident, including continuous and repeated exposure to substantially the same general harmful conditions.” Id. at 120-21, 438 A.2d 282. The policy does not define “accident.”
According to the dictionary, an accident is “an event or condition occurring by chance or arising from unknown or remote causes.” Webster’s Third New International Dictionary 11 (1993). None of the damage the residents allege can be characterized as having been caused by an accident under this definition because none of it occurred by chance or arose from unknown or remote causes. The parks’ alleged failure to carry out contractual and statutory obligations to assure that the foundations were properly installed could not possibly be considered accidental. Indeed, some of the damage alleged could arguably be characterized as having been an expected or intended consequence of the parks’ actions, which damage the policy explicitly excludes from coverage. J.A. 110.
The Maryland Court of Appeals has applied a broader definition of “accident” to allegations of negligence, holding that negligence can be deemed accidental if it “causes damage that is unforeseen or unexpected by the insured.” Sheets v. Brethren Mutual Insurance Co., 342 Md. 634, 679 A.2d 540, 548 (1996). Sheets held that a negligent misrepresentation suit against the insured triggered the insurer’s duty to defend because it was “conceivable” that the insured did not anticipate the damage that resulted from the insured’s negligent misrepresentation. Id. at 551. Unlike Sheets, in this case it is not conceivable that the parks’ alleged conduct “may have taken place without [the parks’] foresight or expectation” of the damage caused. Id. Negligent interactions with residents regarding obligations relating to the foundations and negligent interactions with companies responsible for installing foundations foreseeably and expectedly lead to damage to the mobile homes sitting on the foundations.
Even if the parks’ conduct was not accidental, the parks argue that the damage alleged was caused by an occurrence because the policy defines “occurrence” to include “continuous or repeated exposure to substantially the same general harmful conditions,” see J.A. 120, and the damage alleged resulted from continuous or repeated exposure to the defective foundations. This argument is premised upon a misunderstanding of the term “occurrence,” which the policy defines as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” Id. The continuous- or-repeated-exposure clause does not, as the parks contend, expand coverage to include all damage, whether accidental or not, that results from continuous or repeated exposure. Rather, the clause is most naturally understood as modifying “accident” to prevent temporal limitation. In other words, the clause renders an accidental event that spans some period of time as much a covered occurrence as an accidental event that happens in a moment’s time. Under all circumstances the requirement that the damage-causing *367 events or actions be accidental, which requirement has not been satisfied here, remains.
Because the damage alleged in the residents’ complaint was not caused by an occurrence, it was not potentially covered by the insurers’ policies. Accordingly, the insurers had no duty to defend the suit.
B.
Having concluded that the policies did not cover the residents’ alleged damages, the district court apparently assumed that the parks had to reimburse American Modern for its contribution to the settlement fund and ordered the parks to do so. See J.A. 60.
Neither the policy nor the endorsements contains any provision that gives American Modern a right to reimbursement for settlement payments made in eases in which there is no coverage, and the parks never agreed to grant American Modern any such right in the correspondence that preceded American Modern’s contribution. Nevertheless, American Modern asks the court to hold that it has right to reimbursement. As proof of the existence of its right to reimbursement, American Modern principally relies upon its repeated reservation of that right.
Because neither the policy nor any subsequent agreement between American Modern and its insureds grants American Modern a right to reimbursement, we cannot conclude that American Modern has such a right. American Modern’s repeated reservation of its asserted right to reimbursement is entirely inconsequential. Assiduous reservation of a non-existent right does not bring that right into existence.
CONCLUSION
For the reasons stated herein, we affirm the judgment of the district court that the insurers were under no obligation to defend the suit against the parks. We reverse the district court’s order requiring the parks to reimburse American Modern for its settlement payments.

AFFIRMED IN PART AND REVERSED IN PART

The parties dispute whether the subsequent amended complaints were properly tendered to Continental and Niagra for defense. Because we hold that none of the damages claimed in any of the complaints was covered by the policies, this possible distinction between these insurers and American Modem is of no moment.