**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1149**

———————

AMERICAN MODERN HOME INSURANCE COMPANY,

Plaintiff - Appellee,

and

CONTINENTAL INSURANCE COMPANY; NIAGRA FIRE
INSURANCE COMPANY,

Third Party Defendants - Appellees,

versus

REEDS AT BAYVIEW MOBILE HOME PARK, LLC;
ARUNDEL MOBILE VILLAGE, INCORPORATED; BAYWOOD
MOBILE HOME PARK, LLC; DARLINGTON, LLC; P&B
PARTNERSHIP DUNDALK MOBILE HOMES; ELKRIDGE
MOBILE HOME PARK, INCORPORATED; PENWOOD MOBILE
HOME PARK, INCORPORATED; SOUTHEAST MOBILE HOME
PARK, INCORPORATED,

Defendants - Appellants,

and

PARKWAY VILLAGE ASSOCIATES LIMITED PARTNERSHIP,

Defendant,

and

CNA INSURANCE GROUP,

Third Party Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (CA-03-1869-WDQ)

Argued: February 1, 2006                    Decided: April 14, 2006

Before WILKINS, Chief Judge, and WILKINSON and LUTTIG, Circuit Judges.

Affirmed in part and reversed in part by unpublished per curiam opinion. Chief Judge Wilkins wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Andrew David Levy, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellants. Robert Edward Scott, Jr., SEMMES, BOWEN & SEMMES, Baltimore, Maryland; William Joseph Carter, CARR MALONEY, P.C., Washington, D.C., for Appellees. **ON BRIEF:** Shelly Marie Martin, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellants. Sean P. Edwards, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee American Modern Home Insurance Company.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellants, mobile home park owners, argue that appellees, their liability insurers, must defend a class action suit brought by park residents seeking damages stemming from improperly installed foundations. For the reasons stated below, we hold that the insurers were under no obligation to defend the class action but that the insurers have no right to reimbursement for their contribution to a fund to settle the claims against the parks.

I.

In August of 2002, residents of mobile home parks owned by appellants filed a class action suit in a Maryland state court, complaining about the parks' alleged complicity in the faulty installation of the foundations for their mobile homes. J.A. 271-304. The residents claimed that the parks employed a company that defectively installed mobile home foundations, that the parks knew of the installer's defective workmanship, and that the parks required residents to use this installer. Id. The complaint alleged violations of Maryland consumer protection and real property laws, breach of contract, fraud, negligent misrepresentation, conspiracy, unjust enrichment, fraud in the inducement, negligence, and breach of warranty. Id. at 293-303.

The parks tendered the residents' complaint to their liability insurers, American Modern Home Insurance Company (American Modern),

Continental Insurance Company, and Niagra Insurance Company, for defense, see id. at 259-60, but the insurers denied coverage because "the Complaint does not seek damages for liability covered under the terms of the policies for 'property damage' caused by an 'occurrence,'" id. at 391-409.[*]  The residents' third amended complaint, however, included allegations that their homes were damaged as a result of the parks' alleged conduct.  See, e.g., id. at 529 ("The home . . . is un-level with doors and windows out of square.").  Because American Modern concluded that the third amended complaint might allege property damage covered by its policies, it agreed to defend the parks against it subject to a reservation of its rights to dispute whether the residents' claimed losses were, in fact, covered under the policies.  Id. at 582-600.

Prior to trial, the residents' class action settled.  See id. at 601.  In order to facilitate the settlement, which capped its potential liability, see id. at 630, American Modern agreed to pay $240,000 into the settlement fund, id. at 837.  In letters sent to the parks before the insurers' payment, American Modern made clear that it was paying into the settlement fund "under a complete reservation of rights to recover back its contribution for damages

---

[*]The parties dispute whether the subsequent amended complaints were properly tendered to Continental and Niagra for defense. Because we hold that none of the damages claimed in any of the complaints was covered by the policies, this possible distinction between these insurers and American Modern is of no moment.

that are not covered by its insurance policies with the various insureds." Id. at 655.

American Modern filed this action in the district court after the residents filed their first amended complaint. It sought a declaration that the policy did not obligate the insurers to defend the residents' suit against the parks. Id. at 24-39. The district court, deciding the case after the residents' suit settled, held that the insurers were under no obligation to defend the parks because there was "no potentiality that the [residents'] tort claims could be brought within the coverage of the policy." Id. at 58. Without analysis, it also ordered the parks to "refund to American Modern Home Insurance Group the funds that American Modern paid to satisfy the terms of the class action settlement agreement." Id. at 60. We affirm the district court's holding on coverage but reverse its order requiring the parks to reimburse American Modern for their contribution to the settlement fund.

II.

A.

The district court characterized the residents' allegations as claims for "breach[es] of their [the parks'] contractual duties to the mobile homeowners by failing to properly install their mobile homes." J.A. 57. The district court then concluded that because the definition of "property damage" under Maryland law "does not

include the normal, expected consequences of poor workmanship," there was no potential that the residents' claims could be considered claims for property damage covered by the policy. Id. It therefore held that the insurers were not required to defend the suit. Id. at 58.

The Maryland Court of Appeals has stated the test for deciding whether an insurer has a duty under Maryland law to defend a tort suit against its insured:

> [T]wo types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 285 (Md. 1981). In this case, the policies provide that the insurers have "the right and duty to defend any 'suit' seeking" damages from the insured due to "property damage" that is caused by an "occurrence." J.A. 109. The policy defines "property damage" as "physical injury to tangible property" and defines "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." Id. at 120-21. The policy does not define "accident."

According to the dictionary, an accident is "an event or condition occurring by chance or arising from unknown or remote causes." Webster's Third New International Dictionary 11 (1993).

-6-

None of the damage the residents allege can be characterized as having been caused by an accident under this definition because none of it occurred by chance or arose from unknown or remote causes. The parks' alleged failure to carry out contractual and statutory obligations to assure that the foundations were properly installed could not possibly be considered accidental. Indeed, some of the damage alleged could arguably be characterized as having been an expected or intended consequence of the parks' actions, which damage the policy explicitly excludes from coverage. J.A. 110.

The Maryland Court of Appeals has applied a broader definition of "accident" to allegations of negligence, holding that negligence can be deemed accidental if it "causes damage that is unforeseen or unexpected by the insured." Sheets v. Brethren Mutual Insurance Co., 679 A.2d 540, 548 (Md. 1996). Sheets held that a negligent misrepresentation suit against the insured triggered the insurer's duty to defend because it was "conceivable" that the insured did not anticipate the damage that resulted from the insured's negligent misrepresentation. Id. at 551. Unlike Sheets, in this case it is not conceivable that the parks' alleged conduct "may have taken place without [the parks'] foresight or expectation" of the damage caused. Id. Negligent interactions with residents regarding obligations relating to the foundations and negligent interactions with companies responsible for installing foundations

foreseeably and expectedly lead to damage to the mobile homes sitting on the foundations.

Even if the parks' conduct was not accidental, the parks argue that the damage alleged was caused by an occurrence because the policy defines "occurrence" to include "continuous or repeated exposure to substantially the same general harmful conditions," see J.A. 120, and the damage alleged resulted from continuous or repeated exposure to the defective foundations. This argument is premised upon a misunderstanding of the term "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. The continuous-or-repeated-exposure clause does not, as the parks contend, expand coverage to include all damage, whether accidental or not, that results from continuous or repeated exposure. Rather, the clause is most naturally understood as modifying "accident" to prevent temporal limitation. In other words, the clause renders an <u>accidental</u> event that spans some period of time as much a covered occurrence as an accidental event that happens in a moment's time. Under all circumstances the requirement that the damage-causing events or actions be accidental, which requirement has not been satisfied here, remains.

Because the damage alleged in the residents' complaint was not caused by an occurrence, it was not potentially covered by the

insurers' policies.  Accordingly, the insurers had no duty to defend the suit.

B.

Having concluded that the policies did not cover the residents' alleged damages, the district court apparently assumed that the parks had to reimburse American Modern for its contribution to the settlement fund and ordered the parks to do so. See J.A. 60.

Neither the policy nor the endorsements contains any provision that gives American Modern a right to reimbursement for settlement payments made in cases in which there is no coverage, and the parks never agreed to grant American Modern any such right in the correspondence that preceded American Modern's contribution. Nevertheless, American Modern asks the court to hold that it has right to reimbursement.  As proof of the existence of its right to reimbursement, American Modern principally relies upon its repeated reservation of that right.

Because neither the policy nor any subsequent agreement between American Modern and its insureds grants American Modern a right to reimbursement, we cannot conclude that American Modern has such a right.  American Modern's repeated reservation of its asserted right to reimbursement is entirely inconsequential.

-9-

Assiduous reservation of a non-existent right does not bring that right into existence.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court that the insurers were under no obligation to defend the suit against the parks. We reverse the district court's order requiring the parks to reimburse American Modern for its settlement payments.

<u>AFFIRMED IN PART AND REVERSED IN PART</u>

WILKINS, Chief Judge, concurring in part and dissenting in part:

I concur in the majority opinion to the extent that it holds that the district court erred in requiring the parks to reimburse American for the money it contributed toward the settlement of the underlying suit.  But I respectfully dissent from the portion of the opinion affirming the grant of the insurers' motion for summary judgment on the issue of their duty to defend.

I.

The parks argue that the district court erred not only in granting summary judgment to the insurers on the issue of their duty to defend the parks but also in denying their own partial summary judgment motion on the same issue.  I agree on both accounts.

We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to the nonmoving party.  See Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002).  Summary judgment is warranted when the admissible evidence forecasted by the parties "demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

The parks first contend that the district court erred in determining that they did not face potential liability under the

-11-

complaints for "property damage" caused by an "occurrence." Indeed, they argue that such damages were within the scope of the complaints as a matter of law. I agree.

"As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule." Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999). Under Maryland law, the obligation of an insurer to defend its insured is determined by the allegations in the underlying claims against the insured. See Brohawn v. Transamerica Ins. Co., 347 A.2d 842, 850 (Md. 1975). If the plaintiffs in the underlying case "allege a claim covered by the policy, the insurer has a duty to defend." Id. In addition, even if the plaintiffs in the underlying case do not "allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." Id. If the coverage issue depends upon policy language that is ambiguous, the court "must resolve that ambiguity in favor of the insured before it can conclude that the insurer has or had an obligation to provide a tort defense." St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 286 (Md. 1981).

Each of the policies here (the Policies) requires the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' ... to which this

-12-

insurance applies." J.A. 211. They place upon the insurers "the right and duty to defend any 'suit' seeking those damages." Id. "Property damage" is defined to include "[p]hysical injury to tangible property." Id. at 223. The Policies provide coverage only if the property damage is "caused by an 'occurrence.'" Id. at 211.

All of the complaints requested compensation for property damage. For example, the first Ellerbe complaint alleged in a section labeled "Facts Applicable to All Counts," that the challenged installation procedure

> causes minimally the home to sink and separate due to the undue structural forces on the walls of the home. In extreme scenarios, a home can collapse suddenly and without warning. Accordingly, this defective workmanship results in a wide pattern of foundational problems with resultant damages, some of which are so material a rescission of the contract is the only appropriate remedy.

Id. at 286. This complaint further alleged that with regard to Plaintiff Ellerbe's home, there was "evidence of settling which ... caused interior doors to no longer be square in the door frame. The concrete pillars under the home ... cracked and are sinking inward toward the center of the home."[1] Id. at 280 (internal

---

[1]The insurers argue that the subsequent Ellerbe complaints do not specifically make this allegation with regard to Ellerbe. However, the subsequent complaints make similar allegations. See, e.g., J.A. 445 (wherein first amended complaint alleged that "each respective class member" had suffered damages "in the amount of the purchase price of the home, un-leveling of the home, separation of walls, doors and windows not being square and ... other damages").

quotation marks & emphasis omitted). This complaint sought equitable relief and "all other remedies that equitably and reasonably flow from Defendants' breaches of statutory, common law and contractual obligations." Id. at 304. It also sought compensation for violation of the relevant building code as well as "such other and further relief as the Court appears just, equitable and proper." Id. Thus, the first Ellerbe complaint clearly created the potential for the parks to be liable for property damage caused to the homeowners, and the subsequent complaints contained materially similar allegations.

Furthermore, the complaints created potential liability on the part of the parks for property damage "caused by an 'occurrence.'" Id. at 211. The term "occurrence" is defined in the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 222. Under Maryland law, "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was an event that takes place without the insured's foresight or expectation." Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 548 (Md. 1996) (internal quotation marks & alteration omitted).[2] Regarding foresight or expectation, the test is a subjective, not an objective one: That the damage "should have been foreseen or

_____

[2]The policy in Sheets defined "occurrence" exactly as do the policies in the case at bar. Just as in the policies before us, the policy there did not define "accident."

-14-

expected by the insured" does not disqualify it from having been caused by an accident. Id. at 549. Indeed, were the law otherwise, liability policies would be largely useless because they would almost never cover any negligence liability, since a defendant is liable only for the foreseeable results of his breaches of duty. See id.

The majority opinion holds that the complaints did not allege facts that even potentially could constitute an occurrence, reasoning that "it is not conceivable" that the parks failed to foresee or expect the damage caused by the installations of the foundations. Ante, at 7-8. I do not believe that this is correct.

The complaints allege that the failure to satisfy code requirements regarding the footers may not have been intentional. See, e.g., J.A. 277, 289-90 (first Ellerbe complaint alleging that "[t]he defective footers" may be "due to and based upon a systematic and fundamental misunderstanding [of] ... the requirements for footers in the State of Maryland"). And, although the complaints allege some intentional torts, they also allege causes of action against the parks for, among other things, negligent misrepresentation, violation of building code, negligence, breach of warranty, and torts arising from breach of contract. See Brohawn, 347 A.2d at 850 (holding that liability insurer had duty to defend insured against complaint that alleged intentional tort and negligence in the alternative even when policy

-15-

excluded coverage for intentional torts); <u>Minnick's, Inc. v. Reliance Ins. Co.</u>, 422 A.2d 1028, 1030 (Md. Ct. Spec. App. 1980) ("Once it is determined that the insurance policy creates a duty to defend against claims made within the policy's coverage and it is further determined that the complaint alleges the cause of action within the policy's coverage, the company is obligated to defend the suit, notwithstanding alternative allegations outside the policy's coverage, until such time, if ever, that the claims have been limited to ones outside the policy coverage." (internal quotation marks omitted)).

If the failure to install the homes correctly amounted only to negligence, the parks may not have known that the homes were being installed incorrectly. In that event, there simply would be no basis for concluding that the parks actually expected that the installations would damage the homes; thus, the damage could possibly have been caused by an occurrence. The unexpected nature of the liability is the reason that this sort of claim, in which a company has accidentally caused damage to other property by negligently performing its work, is exactly the sort that commercial general liability (CGL) policies are designed to cover. <u>See, e.g.</u>, <u>Haynes v. Am. Cas. Co.</u>, 179 A.2d 900, 903-04 (Md. 1962) (holding that when contractor hired to do excavation work cut down trees that turned out to be on a third party's property, damage was "caused by accident" (internal quotation marks omitted)).

But even assuming for a moment that all of these claims alleged that the parks knew that the installations did not satisfy the building code--and therefore were negligent--the parks still may have believed that the installations were sufficient to keep the homes from sagging and separating. To conclude otherwise would be to assume that the code requirements were the absolute bare minimum necessary to prevent such damage and that the parks knew that, but there is no support whatsoever for either assumption. Considering that the complaints are silent regarding whether the parks realized that their installations would cause the homes to separate, the majority has no basis for concluding that the parks necessarily realized this.

Relying primarily on Lerner Corp. v. Assurance Co. of America, 707 A.2d 906 (Md. Ct. Spec. App. 1998), the insurers argue that the property damage alleged here was not even potentially caused by an occurrence because it necessarily was "foreseen" by the parks. In Lerner, the plaintiffs were a developer and a firm that provided the developer with construction management services. See Lerner Corp., 707 A.2d at 907. The developer built and sold a building to the United States pursuant to a contract providing that acceptance of the work performed under the contract was deemed to be final except as to latent defects. See id. at 907-08. After the building was sold, GSA discovered latent defects in the building's exterior facade. See id. at 908. The plaintiffs undertook to

repair the facade and then sued their CGL insurers for indemnity. See id.

Some of the CGL policies at issue in Lerner defined "occurrence" to require that any resulting property damage be "neither expected or intended from the standpoint of the Insured." Id. at 909 (internal quotation marks omitted). The Court of Special Appeals concluded that

> [i]f the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect.

Id. at 912. The Lerner court went on to explain, however, that

> if the defect causes unrelated and unexpected ... property damage to something other than the defective object itself, the resulting damages, subject to the terms of the applicable policy, may be covered. For example, if a collapse of the veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered.

Id.; see 9A Steven Plitt et al., Couch on Insurance § 129:4 (3d ed. 2005) ("[A]lthough a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes bodily injury or property damage to something other than the insured's work product.").

The case at bar is distinguishable from Lerner because here, the complaints seek primarily to impose liability for damage not to

the foundations themselves, but to the rest of the homes. That damage was allegedly caused by the "harmful condition[]" of "continuous ... exposure to" an incomplete foundation, the incompleteness of which was allegedly the parks' legal responsibility. J.A. 222.

Indeed, that the scope of the product or work for which the parks were responsible was limited to, at most, the installation of the homes and did <u>not</u> include their construction is the critical point in this case. The insurers attempt to blur this distinction by essentially blending the parks with the companies that sold them the homes ("the Retailers"), as if they were one entity. <u>See, e.g.</u>, Appellee's Br. at 46 ("The uncontradicted allegations were that plaintiffs had a contract with the Parks to deliver a non-defective home that had a proper foundation, which is the gravamen of the Complaint(s)."). The bottom line, however, is that none of the <u>Ellerbe</u> complaints allege that the <u>Ellerbe</u> plaintiffs contracted with the parks for purchase of the homes.

The insurers point out that the <u>Ellerbe</u> plaintiffs' purchase contract <u>with the Retailers</u> allegedly included both construction of the homes and their installation. In other words, the complaints alleged that they purchased installed homes. That is true, and that would be relevant <u>if the Retailers were the insureds here</u>. Because the Retailers were responsible for constructing each entire installed home, under <u>Lerner</u>, they necessarily would have foreseen

that they would be liable for repairing the entire home to the extent they did not deliver what they promised. But since the parks at most had the duty to install the homes, they are considered to have foreseen only the cost of repairing the installation. The complaints therefore created the potentiality that the parks would become liable for property damage they had not foreseen.[3]

II.

The insurers also maintain that selected Policy exclusions demonstrate that the claims in the complaints necessarily fell outside the scope of the Policies. The parks argue that the

---

[3]The insurers contend that even if the complaints created some potential liability for property damage caused by an occurrence, the summary judgment should be affirmed as to Continental Insurance Company and Niagra Fire Insurance Company because they did not insure any parks after 1995. I disagree. The Policies cover liability for "property damage" only if the damage "occurs during the policy period." J.A. 211. But because the Ellerbe plaintiffs alleged that the improper installations dated back to 1993, nothing in the complaint rules out the possibility that some of the alleged property damage had occurred by 1995.

The insurers also maintain that, all other issues aside, they are entitled to summary judgment against three parks in which none of the named plaintiffs reside. That is incorrect as well. Each of the parks named in the class action suit was at risk of a judgment in favor of its residents regardless of whether its residents were named. Because the insurers could have been required to indemnify the parks for such a judgment, they were required to defend their insureds.

-20-

exclusions, as a matter of law, do not preclude the insurers' duty to defend here.  I agree with the parks.

The exclusions cited by the insurers are among those collectively known as the "business risks exclusions."  <u>Century I Joint Venture v. United States Fid. & Guar. Co.</u>, 493 A.2d 370, 374 (Md. Ct. Spec. App. 1985).  In <u>Century I</u>, the Maryland Court of Special Appeals noted:

> Courts have uniformly held that the purpose of exclusions such as these, for damages to the insured's work product or work project out of which an accident arises, is to remove any obligation of the insure[r][4] to pay for the repair or replacement of the policyholder's own defective work or defective product.  Conversely, it is equally well established that such business risk exclusions permit coverage for damages to other property or for other accidental loss caused by the defective product or defective work.

<u>Id.</u> at 374-75 (citations omitted).  I will address seriatim the exclusions identified by the insurers.

The first concerns liability for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  J.A. 214-15 (exclusion 1(k)(6)).  The language of this exclusion begs the question, "On what 'particular part' of the property were the installations here performed?  Was it simply the bottom surfaces of the homes, or should the installations be considered to

---

[4]Although <u>Century I</u> says "insured" rather than "insurer," it is clear from the context and the authorities cited that that was simply a typographical error.

-21-

have been performed on the homes in their entirety?" The former construction is at least reasonable, and the record contains no extrinsic evidence clarifying the parties' intentions. Thus, the "particular part" exclusion does not necessarily bar coverage here. See Frankel v. J. Watson Co., 484 N.E.2d 104, 105-06 (Mass. App. Ct. 1985) (holding that "particular part" exclusion precluded coverage only for foundation itself and not for rest of the property when insured was retained to move farmhouse and construct new foundation for it but negligently constructed foundation, causing damage to the superstructure of the farmhouse).

The insurers next rely on exclusion 1(l), which applies to liability for "'Property damage' to 'your product' arising out of it or any part of it." J.A. 215. Even if the parks had a product here, it certainly cannot be said that the entire homes were their product. Thus, this exclusion is not dispositive.

The insurers also rely on exclusion 1(m), which concerns liability for "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" Id. The Policies state that "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id. Here, because the complaints do not specify whether the installers of the homes were the parks' subcontractors, this exclusion is not dispositive.

The insurers finally identify exclusion 1(n), which excludes coverage for:

> "Property damage" to ... property <u>that has not been physically injured</u>, arising out of:
>
> (1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

<u>Id.</u> (emphasis added).  Here, the complaints alleged that the homes were physically injured.  Thus, this exclusion would not apply.

For all of these reasons, the allegations of the complaints show that the <u>Ellerbe</u> plaintiffs' claims had the potential to fall outside all the business risks exclusions identified by the insurers.  As a matter of law, the exclusions did not preclude the insurers' duty to defend.

III.

In sum, I would hold that the district court erred not only in granting the insurers' motion for summary judgment but also by denying the parks' motion for partial summary judgment.  I respectfully dissent from the majority opinion to the extent that it holds otherwise.

-23-